ATTORNEY FOR APPELLANT
Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Thomas M. Fisher
Solicitor General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana



## In the
## Indiana Supreme Court

No. 49S02-0705-CR-202

AHMAD EDWARDS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

On Remand from the Supreme Court of the United States
No. 07-208

**March 17, 2009**

**Boehm, Justice.**

We hold that the record supports a finding by the trial court that the defendant suffered from a severe mental illness to the point where he was not competent to conduct trial proceedings by himself. The denial of the defendant's request to act pro se at trial therefore did not violate either his federal or state constitutional right to self-representation.

**Facts and Procedural History**

The facts of this case are recited at length in <u>Indiana v. Edwards</u> (<u>Edwards</u>), 128 S. Ct. 2379 (2008), and <u>Edwards v. State</u>, 866 N.E.2d 252 (Ind. 2007).

Defendant Ahmad Edwards was tried twice in connection with a 1999 theft and shooting in downtown Indianapolis. His first trial resulted in convictions of criminal recklessness and theft but a hung jury on charges of attempted murder and battery. At his retrial for attempted murder and battery, Edwards sought to proceed pro se. The trial court found Edwards mentally competent to stand trial under the standard set forth in <u>Dusky v. United States</u>, 362 U.S. 402 (1960) (per curiam),[1] but nevertheless denied Edwards's request to represent himself. Edwards was convicted on both charges.

Edwards appealed and the Court of Appeals reversed, holding that Edwards's Sixth Amendment right to counsel included the right to represent himself. We granted transfer and noted that "the trial court's conclusion that Edwards was incapable of adequate self-representation was, at a minimum, reasonable." 866 N.E.2d at 260. However, we agreed with the Court of Appeals that United States Supreme Court precedent required that a defendant found mentally competent to stand trial be permitted to proceed pro se, and we invited the Supreme Court to consider this issue. <u>Id.</u> The Supreme Court granted the State's petition for writ of certiorari and vacated our judgment reversing the convictions. The Supreme Court held that

> the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under <u>Dusky</u> but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

<u>Edwards</u>, 128 S. Ct. at 2387–88. The case was remanded to us for further disposition. <u>Id.</u> at 2388. We now reconsider the issue in light of <u>Edwards</u>.

---

[1] In <u>Dusky</u>, the United States Supreme Court held that a defendant is competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has a "rational as well as factual understanding of the proceedings against him." 362 U.S. at 402.

**Standard of Review**

Determinations of competency to stand trial under <u>Dusky</u> are reviewed under the clearly erroneous standard, reversed on appeal only if unsupported by the facts and circumstances before the trial court together with any reasonable inferences to be drawn therefrom. <u>See</u> <u>McManus v. State</u>, 814 N.E.2d 253, 260–61 (Ind. 2004); <u>Brewer v. State</u>, 646 N.E.2d 1382, 1385 (Ind. 1995); <u>Ferry v. State</u>, 453 N.E.2d 207, 212 (Ind. 1983); <u>United States v. Magers</u>, 535 F.3d 608, 610 (7th Cir. 2008).[2]

Although it is now clear that the <u>Dusky</u> competency determination is separate and distinct from the <u>Edwards</u> competency determination, both involve a fact-sensitive evaluation of the defendant's capabilities that the trial court is best-situated to make. Indeed, the Supreme Court noted in <u>Edwards</u> that "the trial judge, particularly one such as the trial judge in this case, who presided over one of Edwards' competency hearings and his two trials, will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." 128 S. Ct. at 2387. We conclude that the trial court's determination of competence to act pro se is best reviewed under the clearly erroneous standard.

**I. The Sixth Amendment Claim**

We understand <u>Edwards</u> to announce the following rule of law: a trial court may deny a defendant's request to act pro se when the defendant is mentally competent to stand trial but suffers from severe mental illness to the point where he is not competent to conduct trial proceedings by himself. In this case, Edwards was found mentally competent to stand trial, but the trial court denied his request to proceed pro se. The questions we face on remand, therefore, are whether the trial court found that Edwards suffered from a severe mental illness such that he was not competent to conduct trial proceedings on his own, and, if so, whether the record supports this finding.

---

[2] Earlier cases formulated the standard as "abuse of discretion," <u>see</u> <u>Barnes v. State</u>, 634 N.E.2d 46, 49 (Ind. 1994); <u>Bramley v. State</u>, 543 N.E.2d 629, 633 (Ind. 1989), which may in practical effect be substantially equivalent to "clearly erroneous."

Mental competency determinations—at least where competency to be tried is at issue—are ordinarily made following evidentiary hearings conducted by the trial court. In Indiana this procedure is mandated by statute. See Ind. Code § 35-36-3-1 (2004). If the trial court has reason to believe that the defendant is not competent to stand trial, the court must appoint two or three disinterested mental health physicians to examine the defendant and testify at a hearing to the defendant's ability to understand the proceedings and assist in the preparation of a defense. Id. § 35-36-3-1(a). Edwards had three such hearings in August 2000, March 2002, and April 2003. The second of these was conducted by the judge who would preside over his two trials.

Edwards first moved for leave to represent himself on the first day of the first trial in June 2005. This motion was denied because Edwards was not prepared to proceed and a continuance would have been required. Edwards renewed his request the week before the scheduled start of his retrial in December 2005. The trial court did not hold an evidentiary hearing specifically addressing Edwards's competence to represent himself as an issue distinct from competency to stand trial. The court entertained brief arguments on the first day of Edwards's retrial, and denied Edwards's request after reviewing the existing psychiatric evaluations and the court's own conclusions from prior hearings, and also Edwards's correspondence with the court.

Our alternatives are only two: either resolve the issue on the record before us or remand for a hearing in which the issue is Edwards's mental illness as of December 2005 when his second trial was held. In the first place, an evaluation of Edwards's mental illness over three years ago is inherently problematic. For this reason, retrospective competency hearings are generally disfavored.[3] A nunc pro tunc competency determination is nevertheless permissible

---

[3] See Drope v. Missouri, 420 U.S. 162, 183 (1975) ("Given the inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances . . . , we cannot conclude that such a procedure would be adequate here."); Dusky, 362 U.S. at 403 (noting the "difficulties of retrospectively determining the petitioner's competency"); Pate v. Robinson, 383 U.S. 375, 387 (1966) (same). But see Smith v. State, 443 N.E.2d 1187, 1191 (Ind. 1983) (remanding for retrospective competency determination); Mato v. State, 429 N.E.2d 945, 947 (Ind. 1982) ("Unquestionably, there are difficulties with retrospective determinations of competency such as fading memories, and changing conditions . . . . Nevertheless, depending upon the data that is available, trustworthy determinations can be made retrospectively."); Schuman v. State, 265 Ind. 586, 590–93, 357 N.E.2d 895, 898–99 (1976) (affirming a "retroactive determination of competency"); Evans v. State, 261 Ind. 148, 161, 300 N.E.2d 882, 889 (1973) (remanding case "for a hearing to determine whether appellant was competent to stand trial at the time of his trial" and instructing trial court "to certify its determination following the hearing to this Court for final disposition" of the appeal); State v. Tinsley, 260 Ind. 577, 584–85, 298 N.E.2d 429, 433–34

"whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant." Maynard v. Boone, 468 F.3d 665, 674–75 (10th Cir. 2006). Courts typically consider the following factors in determining the feasibility of retrospective competency hearings:

> (1) [T]he passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial, including the trial judge, counsel for both the government and defendant, and jail officials.

Id. at 675. In the instant case three years have passed and evaluations demonstrate that Edwards's condition has fluctuated over even short periods. There is no psychological evidence as of 2005, and the earlier evidence was considered by the trial court in its 2005 ruling denying Edwards's request to proceed pro se. Statements by Edwards were also considered in detail by the trial court at that time, and the trial court had its own observations from the prior trial. Under these circumstances we believe that the trial court's findings as to Edwards's competency to act pro se, as well as the substantial body of evidence that was available for the trial court's consideration, obviate any need for a retrospective competency hearing.

The issues are whether the trial court found that Edwards was mentally ill to the point that he was not competent to conduct trial proceedings, and if so, whether the record supports this finding. The trial court did not have the benefit of the Supreme Court's analysis in Edwards. We therefore have no specific findings formulated in the language of Edwards. We nevertheless

---

(1973) (same); see also United States v. Giron-Reyes, 234 F.3d 78, 83 (1st Cir. 2000) (remanding for potential retrospective competency determination); United States v. Auen, 846 F.2d 872, 878 (2d Cir. 1988) (same); United States v. Jones, 336 F.3d 245, 260 (3d Cir. 2003) (same); United States v. Mason, 52 F.3d 1286, 1293 (4th Cir. 1995) (same); Wheat v. Thigpen, 793 F.2d 621, 630–32 (5th Cir. 1986) (affirming retrospective competency determination); Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("The Sixth Circuit recognizes that a retrospective [competency] determination may satisfy the requirements of due process provided it is based on evidence related to observations made or knowledge possessed at the time of trial."), abrogated on other grounds by Thompson v. Keohane, 516 U.S. 99 (1995); United States v. Savage, 505 F.3d 754, 758 (7th Cir. 2007) (recognizing viability of retrospective competency determinations); Reynolds v. Norris, 86 F.3d 796, 802–03 (8th Cir. 1996) (remanding for retrospective competency hearing); McMurtrey v. Ryan, 539 F.3d 1112, 1131–32 (9th Cir. 2008) (describing framework for analyzing feasibility of retrospective competency determinations); Maynard v. Boone, 468 F.3d 665, 674–75 (10th Cir. 2006) (affirming retrospective competency determination); Watts v. Singletary, 87 F.3d 1282, 1286–87 n.6 (11th Cir. 1996) (recognizing viability of retrospective competency determinations).

5

conclude that this record is sufficient to affirm the judgment of the trial court, including its conclusion that Edwards was not able to represent himself. Specifically, the trial court found Edwards competent to stand trial but not competent to defend himself. The court addressed Edwards's request for self-representation following pretrial argument and explained as follows:

> I spent some time going over Doctor Richard Sena's report of July 27, 2004; Doctor Sena's report of May 28, 2004; Doctor Dwight Schuster's report of December 31st, 2002; Doctor Philip Coons's report of November 26th, 2002; Doctor Ned Masbaum's report of October 3, 2001; and Doctor Steven Berger's report of February 27, 2001; and finally Doctor Lance E. Trexler's report of February 23, 2000. . . . Each and every report where a . . . neurological exam was performed found either delusions, a delusional disorder of the grandiose type or schizophrenia of an undifferentiated type . . . . Several of the reports refer to rambling writings as an indication of an inability to stay focused. The report upon which we relied in finding that Mr. Edwards was competent was the report of Doctor Robert Sena from July 27, 2004, from Logansport, still found that there was schizophrenia of an undifferentiated type; found that Mr. Edwards acknowledged his need for counsel; found that Mr. Edwards was able to plan a legal strategy in cooperation with his attorney. . . . With these findings, he's competent to stand trial but I'm not going to find he's competent to defend himself. So the request to proceed *pro se* will be denied.

The trial court also explained that Edwards's "voluminous writings" substantiated "what some of the doctors were saying and if you'll remember, the finding of competency was conditioned by the doctors on the assistance of counsel."

We believe these conclusions collectively constitute a finding by the trial court that Edwards suffered from severe mental illness to the point where he was not competent to conduct trial proceedings by himself. We also conclude that the trial court's determinations are supported by the record. Edwards was evaluated by several mental health professionals from 1999 through 2004 and was diagnosed at various points in time with schizophrenia of an undifferentiated type, disorganized type schizophrenia, a delusional disorder, and a personality disorder. Edwards's psychiatric evaluations reveal that he experienced hallucinations and delusions, and that he manifested disorganized thought processes and impaired verbal communication. Several psychiatric reports concluded that Edwards was not competent to stand trial in the first instance, let alone represent himself. And as the trial court pointed out, Edwards produced a litany of disorganized and incoherent motions that support the physicians' observations as well as the conclusion that Edwards was not competent to conduct trial proceedings on his own. The court's ruling was thus based on an extensive record of psychiatric

6

evaluations that were already produced in connection with Edwards's competency proceedings, as well as a number of self-authored motions that Edwards submitted to the trial court in the course of these proceedings. The trial court was also in a position to observe Edwards's behavior and demeanor in the first trial, the two pretrial pro se request arguments, and Edwards's 2002 competency hearing.

The evidence is not without conflict. At least one of Edwards's evaluations found that he was "free of psychosis, depression, mania, and confusion" and that he was able to "think clearly," "answer questions appropriately," and "carry on a normal conversation." The most recent competency evaluation indicated that Edwards was taking medication and receiving therapy for his psychosis, that Edwards reported no longer experiencing hallucinations, delusions, and ideas of reference, and that he "demonstrated an excellent understanding of courtroom procedures." And although the record contains numerous pleadings written by Edwards that are virtually incomprehensible, several of his motions and in-court colloquies demonstrate lucidity, cooperativeness, and at least a rudimentary understanding of trial practice.

The evaluations on which the trial court relied were performed between 1999 and July 2004, and Edwards's retrial did not take place until December 2005. Mental competency is not a static condition and is to be determined "at the time of trial." See Burt v. Uchtman, 422 F.3d 557, 568 (7th Cir. 2005) (citing Drope v. Missouri, 420 U.S. 162, 181 (1975); Pate v. Robinson, 383 U.S. 375, 387 (1966)); see also Evans v. State, 261 Ind. 148, 160–61, 300 N.E.2d 882, 888 (1973) (where appellant was tried in April of 1959, the issue was "not appellant's mental state in May of 1959, but his ability to stand trial in April of that year"); State v. Tinsley, 260 Ind. 577, 585, 298 N.E.2d 429, 434 (1973) ("The ultimate and relevant issue is not the state of Tinsley's mental health in 1956, but his abilities to function at his trial in 1971."). In this case, approximately eighteen months elapsed between the time of Edwards's most recent psychiatric evaluation and the time of his retrial. Several experts testified at Edwards's competency hearings that his disorders could be managed and treated using psychotropic medication. Moreover, Edwards's psychiatric evaluations reflect the positive progression and "marked improvement" coincident with pharmacological and psychological therapy necessary to find Edwards competent to stand trial.

7

Having said that, we remain mindful of the standard of review and believe the totality of the evidence adequately supports the trial court's findings. Edwards's psychiatric evaluations at times disagree, but they overwhelmingly confirm that Edwards has suffered from severe and pervasive mental illness. And though the trial court did not rely on any psychiatric evaluations completed after July of 2004, the trial judge had the opportunity to observe Edwards at his July trial. The trial court also had the lengthy record of Edwards's mental disorders and the discordant motions that Edwards submitted, some immediately preceding his retrial. Finally, the trial court had before it the record of erratic performance that gave no confidence that whatever Edwards's state as of a given moment, it might be a transient condition. Taken together, these circumstances support the trial court's determination that Edwards suffered from severe mental illness such that he was not competent to represent himself. We therefore affirm the judgment of the trial court.

## II. The Indiana Constitutional Claim

Edwards urges us to find broader self-representation rights under the Indiana Constitution than those afforded by the federal constitution. Edwards contends that there is a "firmer foundation" for the right of self-representation under article I, section 13 which guarantees an accused the right "to be heard by himself and by counsel."[4]

Section 13 does provide broader rights than the Sixth Amendment. But each of these expanded rights dealt with the right to counsel, and none addressed the right of self-representation. Compare Malinski v. State, 794 N.E.2d 1071, 1079 (Ind. 2003) (section 13 guarantees the right to be notified that hired counsel is present at police station and wishes to consult with the accused) with Moran v. Burbine, 475 U.S. 412, 428–32 (1986) (Sixth Amendment guarantees no such right); compare Ajabu v. State, 693 N.E.2d 921, 928 n.4 (Ind. 1998) (under some circumstances, section 13 right to counsel attaches prior to the filing of formal charges) and Pirtle v. State, 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975) (person who is

---

[4] The State argues that Edwards waived his section 13 claim by failing to provide independent state constitutional analysis in his original appellate brief. In Edwards's original direct appeal, we found that Edwards had made no separate argument under the Indiana Constitution and we decided the case solely on federal constitutional grounds. 866 N.E.2d at 254–55 n.1. But following the Supreme Court's ruling in Edwards, we solicited supplemental briefing from the parties on remand. Edwards has since provided independent state constitutional analysis, so we will address his section 13 claim.

asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent) with United States v. Gouveia, 467 U.S. 180, 187–88 (1984) (Sixth Amendment right to counsel does not attach until the initiation of adversary judicial proceedings).

We think that the right to self-representation of mentally impaired persons under section 13 is no broader than that guaranteed by the Sixth Amendment as interpreted in Edwards. Our precedents respecting self-representation have tracked federal standards. See, e.g., Stroud v. State, 809 N.E.2d 274, 279 (Ind. 2004) (drawing no distinction between state and federal constitutional requirements for waiving counsel); Jones v. State, 783 N.E.2d 1132, 1138 (Ind. 2003) (same). Moreover, we have found that the Indiana Constitution assumes and demands fundamental fairness in all judicial proceedings. Sanchez v. State, 749 N.E.2d 509, 515 (Ind. 2001). Denial of self-representation is admittedly an intrusion into the defendant's right to direct his own affairs and to make his own decisions in conducting his defense. But if a defendant is so impaired that a coherent presentation of a defense is unlikely, fairness demands that the court insist upon representation. We are persuaded that a defendant's mental illness may preclude competent self-representation in the interest of a fair trial, and therefore conclude that the Indiana Constitution gives no broader rights than the Sixth Amendment as explained in Edwards.

We acknowledge the textual distinction between the Sixth Amendment and section 13. Section 13 guarantees the accused the right "to be heard by himself." We have also observed that the "Indiana Constitution places a unique value upon the desire of an individual accused of a crime to speak out personally in the courtroom and state what in his mind constitutes a predicate for his innocence of the charges." Biddinger v. State, 868 N.E.2d 407, 412 (Ind. 2007) (quoting Vicory v. State, 802 N.E.2d 426, 429 (Ind. 2004)). But these expressions have addressed the right of the defendant to present evidence, Sanchez, 749 N.E.2d at 520–21, to testify at trial, Phillips v. State, 673 N.E.2d 1200, 1201–02 (Ind. 1996), or to make statements in allocution at sentencing. Vicory, 802 N.E.2d at 429. None specifically dealt with whether the defendant or counsel was to take these steps. The constitution, in guaranteeing the right to be heard "by himself and by counsel," does not express a preference for either. We have frequently held that where the defendant is represented by counsel, some actions must be taken by counsel. See Underwood v. State, 722 N.E.2d 828, 832 (Ind. 2000) ("[O]nce counsel [i]s appointed, [a

9

d]efendant sp[eaks] to the court through counsel."); <u>Vance v. State</u>, 620 N.E.2d 687, 689 (Ind. 1993) (when a defendant is represented by counsel, it is within the trial court's discretion to entertain or strike pro se motions). We do not consider the accused's right "to be heard by himself" as an unlimited right to conduct all trial proceedings on his own.

Finally, the State encourages us to adopt a section 13 standard allowing courts to "deny a criminal defendant the right to represent himself at trial where the defendant cannot communicate coherently with the court or jury." The State argues that "[r]ather than focusing on whether a defendant has any particular mental diagnosis or any particular level of mental cognition, the State's proposed rule relates directly to the basic functional demands that having a trial necessarily places on the defendant." The federal constitution establishes rights that the states may choose to expand, but the Supremacy Clause precludes any state doctrine that restricts a federal constitutional right. <u>Edwards</u> describes a limitation on the general federal constitutional right to self-representation, and the Supreme Court expressed uncertainty as to how the State's proposal would "work in practice" and declined to adopt it as a federal standard. 128 S. Ct. at 2388. It remains to be seen whether the State's proposal, or any attempt to refine the <u>Edwards</u> language, will be found to violate the Sixth Amendment right to self-representation. We therefore decline in the absence of experience under the current <u>Edwards</u> language to attempt to tinker with it.

## Conclusion

The trial court's denial of Edwards's request to proceed pro se was justified by the record and did not violate Edwards's right to self-representation under either the Sixth Amendment or article I, section 13. Edwards's convictions of attempted murder and battery are affirmed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.