**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOEL C. WEINEKE**
Weineke Law Office, LLC
Plainfield, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| SANTIAGO VALDEZ, | ) | |
| Appellant-Defendant, | ) | |
| vs. | ) | No.  18A05-1407-CR-304 |
| STATE OF INDIANA, | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Kimberly S. Dowling, Judge
Cause No. 18C02-1204-FB-3

**January 22, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Santiago Valdez ("Valdez") was found mentally competent to stand trial on charges of Attempted Rape,[1] Criminal Confinement,[2] Attempted Incest,[3] Intimidation,[4] and Battery,[5] but his motion to proceed pro-se was denied. Valdez pursued an interlocutory appeal, presenting the sole issue of whether the denial is clearly erroneous. We affirm.

**Facts and Procedural History**

On April 7, 2012, Muncie police officers responded to a 9-1-1 call at a residence where they found a naked, screaming woman and Valdez standing behind her. The State brought criminal charges against Valdez and he was appointed a public defender. On July 13, 2012, counsel filed a "Suggestion of Insanity" and requested that Valdez be examined by Dr. Craig Buckles, a psychiatrist, and Dr. Frank Krause, a psychologist. (App. 85.) Counsel also advised the trial court that Valdez had previously been a professional boxer and had sustained blows to his head.

After interviewing Valdez, Drs. Buckles and Krause opined that Valdez was able to appreciate the wrongfulness of his conduct. Valdez was found competent to stand trial. On August 16, 2012, the trial court conducted a hearing on Valdez's request to proceed pro-se and initially granted the motion.

Over the next few months, Valdez filed numerous motions. Although some appeared to be appropriate motions, Valdez also claimed that he needed to be tested for

[1] Ind. Code §§ 35-42-4-1, 35-41-5-1.
[2] Ind. Code § 35-42-3-3.
[3] Ind. Code §§ 35-46-1-3, 35-41-5-1.
[4] Ind. Code § 35-45-2-1.
[5] Ind. Code § 35-42-2-1. We refer to the statutes in effect at the time of Valdez's alleged offenses.

mind-altering drugs and requested an investigation of the sheriff's department. On December 28, 2012, the trial court ordered an evaluation of Valdez's competency to stand trial.

Dr. Rebecca Mueller, a psychiatrist, was appointed to evaluate Valdez. After administration of a "cursory exam that was along the lines of a Folstein mini mental status," Tr. 57, Dr. Mueller did not perceive "glaring thought disorders." (Tr. 65.) Nor did she find evidence of "dementia pugilistica."[6] (Tr. 65.) Dr. James McDaniel, a psychologist, evaluated Valdez on January 11, 2013. He opined that Valdez was competent to stand trial and to proceed pro-se.

On February 4, 2013, Valdez was examined for seven hours by Dr. Javan Horwitz, a neuropsychologist. According to Dr. Horwitz, Valdez appeared rational for the first four or five hours. However, he subsequently talked incoherently and displayed psychotic symptoms. Valdez reported to Dr. Horwitz that he was suffering persecution and had been subjected to electronic monitoring in his jail cell and the court room. He also reported that he was forced to undergo electronic surgery; specifically, his throat and heart had been cut. He complained of being sprayed with sulfuric acid and "dummy dust." (Tr. 116.) Valdez offered to display burns on his body. To support his claim of torture, Valdez also proffered for testing a Ramen noodle bag containing fecal and saliva samples. Dr. Horwitz provided the trial court with a written report concluding that Valdez was not competent to stand trial or to represent himself. He diagnosed Valdez as suffering from paranoid schizophrenia.

---

[6] Dr. Mueller also referred to the condition as "punch drunk encephalopathy," a result of too many blows to the head. (Tr. 66.)

3

On March 7, 2013, the trial court conducted a competency hearing, at which Drs. Mueller, Horwitz, McDaniel, Buckles, and Krause testified and affirmed their written recommendations. The latter three acknowledged that Dr. Horwitz had performed the most extensive examination of Valdez to date. Dr. Horwitz testified that, although Valdez displayed moments of lucidity, he was not competent to stand trial due to "executive dysfunction and the significant thought disorder related to his schizophrenia." (Tr. 112.)

Valdez testified at the hearing, claiming that jail staff had tortured him and attempted to murder him. He stated that he had been given a "speed-type drug" causing a sixty-pound weight loss. (Tr. 136.) According to Valdez, food and water had been electronically removed from his stomach, chemicals had been emitted under his cell door, he had been cut up inside his body, he had been subjected to electronic implants, and he had been burned by lasers. He reported that jail employees and the Muncie Police Department were aiding the prosecution by monitoring him in the shower, cell, and courtroom. Valdez proffered a Cheetos bag of purported evidence and he asked that the trial court order his body examined for burns.

At the conclusion of the hearing, the trial court entered an order denying Valdez's request to proceed pro-se. The trial court concluded that "the Defendant here cannot communicate coherently with the Court" and provided specific examples:

> The Defendant has provided "Cheetos" bags with paper towels folded up in them requesting the Court have them tested for poisons, etc.

> The Defendant has provided envelopes to the Court with pages of magazines folded inside of them asking that they be tested for poisons, and admitted as evidence.

The Defendant has filed voluminous pleadings and motions that ramble, are repetitive and are incoherent. Many of the motions make reference to being tortured in jail, the sheriff's office attempting to murder him, being poisoned, etc.

The Defendant has provided fecal and saliva samples to the FBI and to Dr. Horwitz asking that they be tested for proof of poisons.

The Defendant has reported to numerous people that he hears voices coming from the ducts in the jail, and has asked to be moved to different cells as a result.

The Defendant has difficult differentiating between fantasy and reality.

The Defendant struggles with the connection between his moral knowledge, appreciation of his behaviors and social context, and his chosen actions and consequences.

(App. 508.) The State, defense counsel, and the trial court agreed that Valdez was not competent to stand trial and Valdez was committed to the Logansport State Hospital Division of Mental Health. On June 6, 2013, the Superintendent certified that Valdez "has attained the ability to understand the proceedings and assist in the preparation of his defense." (App. 516.)

Valdez, through counsel, filed a renewal of his motion to proceed pro-se. On May 29, 2014, a hearing was conducted at which Valdez testified. Valdez testified that "all through the night" prior to the hearing, he had been subjected to electronic cutting. (Tr. 186.) He claimed to have suffered cuts to his neck, throat, and chest area. He described the defense he wished to assert on his own behalf, that is, that the victim had perjured herself during her deposition. He anticipated arguing that the 9-1-1 tape was false and that evidence had been fabricated by the Muncie Police Department. He opined it would be necessary to discuss his subjection to surveillance and electronic surgeries because it

5

formed part of the fabricated case against him. According to Valdez, he needed to depose police officers to garner evidence of the plot against him. Valdez's counsel suggested that an insanity defense might be appropriate, but Valdez insisted he had never been insane.

The trial court issued a second order with respect to Valdez's request to proceed pro-se, specifically incorporating the findings from the order of March 7, 2013. The order included additional findings, providing in pertinent part:

> The Defendant has, and by his own admission, filed over one hundred (100) "motions" in this case, some while he was representing himself and some while he had counsel. The term "motion" is used loosely by the Court, in that most, if not all of these documents, were rambling documents wherein the Court was mostly unable to determine what action the Defendant wanted the Court to take; that is other than requesting the Court order full body scans of the Defendant because of the allegations that the Sheriff's department is trying to murder him by using lasers to cut the backs of his eyes, his throat and his chest.
>
> As a part of this hearing, the Defendant demonstrated that he does not have a working knowledge of the rules of evidence. The Defendant's definition of hearsay, for example, was nonsensical and rambling. His assertion that there is "totempole" hearsay is incomprehensible.
>
> The Defendant also demonstrated, through his testimony, that he does not have a working knowledge of voir dire, asserting that he is entitled to three strikes.
>
> The Defendant further demonstrated his lack of trial skills by asserting that his defense will be that these charges were fabricated ahead of time, that the police paid the alleged victim money and cocaine to file the report, and that the police falsified the 911 tape.
>
> Finally, the Defendant maintains that he continues to be tortured, that the Jail Staff is conducting illegal surveillance, and that the most recent incident of torture was continuously during the night before our hearing.

(App. 591.) Concluding that Valdez's "lack of capacity threatens an improper conviction or sentence and undercuts the most basic of the Constitution's criminal law objectives of

6

providing a fair trial," the trial court denied Valdez's motion to proceed pro-se. This Court accepted jurisdiction of Valdez's interlocutory appeal.

## Discussion and Decision

A defendant's Sixth Amendment right to counsel is essential to the fairness of a criminal proceeding. Drake v. State, 895 N.E.2d 389, 392 (Ind. Ct. App. 2008) (citing Gideon v. Wainwright, 372 U.S. 335, 344-45 (1963)). Implicit in the right to counsel is the right to self-representation. Faretta v. California, 422 U.S. 806, 819 (1975).

However, the right of self-representation is not absolute. "[A] trial court may deny a defendant's request to act pro se when the defendant is mentally competent to stand trial but suffers from severe mental illness to the point where he is not competent to conduct trial proceedings by himself." Edwards v. State, 902 N.E.2d 821, 824 (Ind. 2009) (citing Indiana v. Edwards, 554 U.S. 164 (2008)).[7] The trial court's determination of competence to act pro se will be reviewed under the clearly erroneous standard. Id. "Clear error is that which leaves us with a definite and firm conviction that a mistake has been made." Austin v. State, 997 N.E.2d 1027, 1040 (Ind. 2013). In reviewing for clear error, we neither reweigh the evidence nor determine the credibility of witnesses, but consider only the probative evidence and reasonable inferences supporting the judgment. Id.

Mental competency is not a static condition; accordingly, it is to be determined at the time of trial. Edwards, 902 N.E.2d at 827. "[I]f a defendant is so impaired that a

---

[7] Article 1, section 13 of the Indiana Constitution provides "no broader right to self-representation of mentally impaired persons" than that guaranteed by the Sixth Amendment. Edwards, 902 N.E.2d at 828. Valdez also alleged a violation of Article 1, section 3 of the Indiana Constitution, but developed no corresponding argument.

coherent presentation of a defense is unlikely, fairness demands that the court insist upon representation." Id. at 829.

The record reveals that Valdez suffers from a severe mental illness. Dr. Krause rendered to the trial court a report including a diagnosis that Valdez suffers from an antisocial personality disorder and schizotypal personality disorder. Dr. Buckles issued a report including his finding that Valdez displays symptoms suggestive of schizophrenia. Dr. Horwitz, who examined Valdez most thoroughly, diagnosed Valdez as a paranoid schizophrenic.

As to Valdez's competence to conduct trial proceedings himself, the trial court heard abundant testimony and was in a position to observe Valdez's demeanor and conduct at multiple hearings. Valdez consistently claimed that he had been framed for crimes he did not commit, he had been subjected to torture at the hands of law enforcement personnel, and an appropriate defense would include claims that all evidence against him, including the 9-1-1 call tape, had been fabricated. He had filed numerous motions – many of which were indecipherable – and he had requested a polygraph test to reveal the truth of his accusations of torture. Valdez had, on multiple occasions, proffered food bags containing his excrement, which he asserted would reveal evidence of his subjection to torture.

Valdez, by counsel, points to evidence that Valdez is intelligent and articulate, and asserts that the "trial court's criticisms were unfounded and exaggerated." (Appellant's Br. at 16.) According to Valdez, he displayed an appropriate understanding of the definition of hearsay and the process of voir dire. Valdez presents us with an invitation to reweigh the evidence, which we decline. Austin, 997 N.E.2d at 1040.

8

**Conclusion**

The trial court did not clearly err in finding that Valdez suffers from severe mental illness such that he is not competent to represent himself at trial.

Affirmed.

ROBB, J., and BROWN, J., concur.