

**FILED**

Sep 28 2016, 8:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Susan E. Sturdivant,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 28, 2016

Court of Appeals Case No.
08A02-1601-CR-186

Appeal from the Carroll Superior
Court

The Honorable Kurtis Fouts,
Judge

Trial Court Cause No.
08D01-1408-F6-19

**Vaidik, Chief Judge.**

# Case Summary

[1] Charged with possession of methamphetamine and other offenses, Susan Sturdivant told the trial court—at multiple pretrial hearings over the course of fourteen months—that she wanted to waive her right to counsel and represent herself. The court allowed her to do so, and a jury convicted her on all charges. Now represented by an attorney, Sturdivant claims that she is mentally ill and that the trial court should have denied her request for self-representation under *Indiana v. Edwards*, 554 U.S. 164 (2008), which recognized the authority of trial courts to insist upon representation by counsel for those defendants who "suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." Because the trial court was in the best position to judge Sturdivant's competency and there is no evidence that Sturdivant was suffering from "severe mental illness," we affirm the trial court's decision to allow her to conduct her own defense.

# Facts and Procedural Background

[2] Early one morning in August 2014, a Delphi police officer stopped Sturdivant's pickup after Sturdivant twice failed to use a turn signal. Other officers arrived at the scene, and Sturdivant's behavior—"yelling and screaming," "talking extremely fast," "licking her lips constantly," "fidgeting a lot," 10/27/15 Tr. p. 27-30—led to a dog sniff of her pickup. The dog alerted to the presence of drugs, and the officers found marijuana and a clear baggie containing a white powdery substance that tested positive for methamphetamine. An officer then

obtained a warrant to test Sturdivant's blood, which revealed the presence of methamphetamine. Sturdivant was charged with possession of methamphetamine, possession of marijuana, operating while intoxicated, and operating with a controlled substance in her body.

[3]     At the initial hearing on August 25, 2014, Sturdivant and the other defendants present were advised as follows with regard to the right to counsel:

> Each of you have the right to be represented by an attorney in all stages of the proceedings including trial and appeal. If you intend to employ an attorney, you should do so within twenty days of this initial hearing if you are charged with a felony or within ten days if you are charged with a misdemeanor. The reason for that is [] that there are deadlines for raising defenses and filing motions and if those deadlines are missed then the legal issues and the defenses that you could have raised would be waived. If you don't have the money, means, or property to employ your own attorney, you have the right to have an attorney appointed for you at no expense to you. You are not required to have an attorney. You do have a constitutional right to represent yourself. But before you do that you should realize that you may conduct a defense as to your own detriment. Meaning you could do yourself more harm than good. You won't uh receive any special favors or indulgences from the Court just because you don't have a lawyer. You'll have to abide by the same standards as a lawyer as to the law and procedure. And the State will be represented by an experienced professional legal counsel. And at today's hearing that is Mr. Bean seated to my left and your right today. Uh an attorney's experience, knowledge of the law, possible defenses, and technical rules or procedures and evidence would be valuable in evaluating, negotiating, preparing, and presenting your case.

8/25/14 Tr. p. 4-5. Later, as the court discussed Sturdivant's specific charges and potential penalties with her, Sturdivant said, "The Constitution of the citizens rights state a person cannot pass or bridge any law to violate a person's constitutional right. It's wrote on eight and a half by eleven, a legal documentation, it's eight and a half by fourteen, to the clerk . . . ." *Id*. at 12. Nonetheless, Sturdivant eventually stated that she understood the charges against her. The court then asked, "[D]id you want to be represented by a lawyer?" *Id*. at 18. Sturdivant responded, "No I do not." *Id*.

[4] At a pretrial conference held in October 2014, the trial court noted its concern with Sturdivant's self-representation:

> Court: Ms. Sturdivant are [you] still intending to uh represent yourself?
>
> Sturdivant: Yes sir.
>
> Court: Alright. I'm concern[ed] about that. But it's your right.
>
> Sturdivant: It is my right.

10/8/14 Tr. p. 4. The court also addressed various discovery and scheduling issues with Sturdivant.

[5] The next pretrial conference was held on March 26, 2015, five days before Sturdivant's trial was to begin. The trial court began by explaining to Sturdivant how jury trials typically proceed, including jury selection,

preliminary instructions, opening statements, examination and cross-examination of witnesses, exhibits, the defendant's decision whether to testify, closing arguments, final instructions, the ultimate burden of proof on the State, and jury deliberations. After Sturdivant indicated her understanding of the process, the court stated, "It sounds simple now but it's not." 3/26/15 Tr. p. 9. Sturdivant replied, "I know it's not." *Id*. Nonetheless, the court revisited the right to counsel, and Sturdivant agreed to the appointment of an attorney:

> Court: [Y]ou have a right to have a lawyer. If you don't have the money, means, or property to afford to employ your own lawyer, uh that you have a right to have one appointed for you at no expense to you. Uh you're not required to have a lawyer. You do have a constitutional right to represent yourself. You know that.
>
> Sturdivant: Yes.
>
> Court: But I need to advise you before you do that, that you could conduct a defense as to your own detriment. Means you could do yourself more harm than good. You will receive no special indulgences from the Court just because you don't have a lawyer. You will have to abide by the same standards as a lawyer as to the law and procedure. And the State is going to be represented by experienced professional lawyer [sic], which is Mr. Bean. Uh yes.
>
> Sturdivant: I will take a lawyer if you'll still give me one.
>
> Court: Oh, okay.

*Id*. at 10.  The court appointed an attorney, who then requested and was granted a continuance of the trial.

When the parties returned to court for a pretrial conference on June 26, 2015, Sturdivant's attorney filed a motion to withdraw from the appointment, citing a "breakdown in communication."  6/26/15 Tr. p. 4.  When Sturdivant agreed and indicated her desire to go forward without an attorney, the court gave her the same right-to-counsel advisement it had given her at the initial hearing, adding:

> [A]n attorney has skills and expertise in preparing for and presenting a proper defense that you do not possess.  These include among other things, investigating and interrogating witnesses, gathering appropriate documentary evidence, obtaining favorable defense witnesses, preparing and filing pretrial motions, preparing appropriate written instructions for the jury, presenting favorable opening and closing statements, examining and cross examining witnesses at trial, and recognizing objectionable, prejudicial evidence and testimony and proper objections.

*Id*. at 5-6.  Sturdivant said that she understood the advantages of having counsel but that she nonetheless wanted to represent herself.

At a pretrial conference on September 17, 2015, the court and the parties discussed preliminary jury instructions and various discovery issues, the State's witness list, jury selection, and opening statements.  In objecting to the jury instructions, Sturdivant asserted that "you can't use State laws to run your courtroom," that "state laws are prohibited I believe by a couple of the

amendments, of the Bill of Rights," and that "Indiana can't have a constitution." 9/17/15 Tr. p. 5, 7. The court later asked Sturdivant if she wanted standby counsel. When Sturdivant declined, the court sought to clarify the role of standby counsel: "Are you sure? Because I'd like to[;] they won't have to sit there and do anything other than just be there for questions." *Id*. at 18. Sturdivant insisted that she wanted to proceed without counsel.

[9] The final pretrial conference was held on October 26, 2015, the day before trial. The prosecutor, at Sturdivant's request, summarized the expected testimony of each of the State's witnesses. The court also discussed various evidentiary matters with Sturdivant and returned to the issue of counsel:

> Court: Ms. Sturdivant I'm, I guess just one last time here.
>
> Sturdivant: No I do not want, no no no, no I do not want a plea . . .
>
> Court: I'm going to ask . . .
>
> Sturdivant: I know what you're going to ask me; no I don't want one of these counselors.
>
> Court: Well let me just make a record as I did before. Because . . . I pretty well knew that's what you would say.
>
> Sturdivant: You better believe it.

10/26/15 Tr. p. 12-13. The court gave Sturdivant the same right-to-counsel advisements that it had given her previously, and Sturdivant confirmed that she understood her rights and that she still wished to proceed without counsel or standby counsel. Sturdivant then asked, "If I'm found guilty, am I going to be executed?" *Id*. at 15. The court told her that she would not be and explained to her once again the charges she was facing. Before adjourning, the court reminded Sturdivant how jury selection would proceed.

[10] On the morning of trial, the court repeated the right-to-counsel advisements a final time, and Sturdivant indicated her understanding. Sturdivant then objected to the entire proceeding based on "Mayberry vs. Madison" (presumably a reference to the United States Supreme Court's 1803 decision in *Marbury v. Madison*) and argued that "judicial immunity [is] unconstitutional." 10/27/15 Tr. p. 9-10. The court rejected these claims, and the trial proceeded as scheduled. Sturdivant lodged several invalid objections to the State's evidence, asked many puzzling questions of witnesses, made certain damaging mistakes and admissions in front of the jury, and pressed various flawed legal theories. At one point, Sturdivant informed a testifying officer that "treason is punishable by death." *Id*. at 57. The jury found Sturdivant guilty on all counts. In sentencing Sturdivant, the trial court stated its belief that "there may be some undiagnosed mental illness" and found this to be a mitigating circumstance. 11/23/15 Tr. p. 15.

[11] Sturdivant now appeals.

# Discussion and Decision

[12] Sturdivant contends that the trial court should not have allowed her to represent herself, despite the fact that she had a constitutional right to do so and the fact that she explicitly and repeatedly expressed her desire to exercise that right. She notes that a prerequisite to self-representation is a knowing, intelligent, and voluntary waiver of a closely related right—the right to be represented by an attorney—and she argues that her waiver of that right in this case was not knowing and intelligent (she concedes that it was voluntary). Unlike most defendants who make such a claim, Sturdivant does not challenge the adequacy of the trial court's advisements regarding the dangers of self-representation and the benefits of counsel. *See, e.g., United States v. Moya-Gomez*, 860 F.2d 706, 733 (7th Cir. 1988) ("When the district court permits the defendant to proceed pro se, the appeal, like the one presently before this court, inevitably will focus on whether the court adequately informed him of the dangers and disadvantages of self-representation."), *reh'g denied*. Nor does she deny that she consistently indicated to the trial court that she understood its advisements. Instead, she asserts that she also made "bizarre statements" and "incorrect and unusual legal arguments" that should have led the trial court to conclude that she was too mentally ill to represent herself and therefore wholly *incapable* of making a knowing and intelligent waiver—regardless of the clarity of the court's advisements and her acknowledgements in response. Appellant's Reply Br. p. 11.

[13] Sturdivant's argument highlights a conflict that confronts trial courts whenever defendants announce an intention to represent themselves. We have recognized "the tension between the right to counsel and the right of self-representation, and the difficult position in which this places the trial court." *Dowell v. State*, 557 N.E.2d 1063, 1066 (Ind. Ct. App. 1990), *trans. denied*. "Because these rights are reciprocal, to assert one necessitates a waiver of the other." *Id*. "If the trial court allows the defendant to proceed pro se, it may have denied the defendant the right to counsel, and if the trial court appoints counsel, it may have violated the defendant's right to proceed pro se." *Id*. As such, no matter what decision the trial court ultimately makes—whether to honor the defendant's request to represent herself or to deny it—the defendant is likely to appeal if convicted. *Moya-Gomez*, 860 F.2d at 732-33.

[14] The United States Supreme Court has described the fundamental nature of the right to self-representation:

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free

personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law.

*Faretta v. California*, 422 U.S. 806, 834 (1975) (citation omitted).

[15] That said, the right of self-representation, like most constitutional rights, is not absolute. In *Indiana v. Edwards*, the Supreme Court held that a trial court can insist upon representation by counsel for those defendants who "suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." 554 U.S. 164, 178 (2008). Sturdivant argues that her statements and overall performance in representing herself should have led the trial court to conclude that she belonged in this category of defendants and to appoint an attorney against her wishes.

[16] In making this argument, Sturdivant faces an uphill battle. On remand from *Indiana v. Edwards*, the Indiana Supreme Court held that determining whether a particular defendant is too mentally ill to conduct her own defense involves "a fact-sensitive evaluation of the defendant's capabilities that the trial court is best-situated to make." *Edwards v. State*, 902 N.E.2d 821, 824 (Ind. 2009); *see also Jackson v. State*, 868 N.E.2d 494, 503 (Ind. 2007) (explaining that trial court "is in the best position to assess whether a defendant has knowingly and intelligently waived counsel"). As such, we will overturn a trial court's decision in this regard only if it is clearly erroneous—if it is "unsupported by the facts

and circumstances before the trial court together with any reasonable inferences to be drawn therefrom." *Edwards v. State*, 902 N.E.2d at 824.

[17] Sturdivant contends that the trial court should have found her to be severely mentally ill for purposes of *Indiana v. Edwards* based on her "bizarre statements as well as incorrect and unusual legal arguments" before and during trial, including those noted above: "The Constitution of the citizens rights state a person cannot pass or bridge any law to violate a person's constitutional right. It's wrote on eight and a half by eleven, a legal documentation, it's eight and a half by fourteen, to the clerk," 8/25/14 Tr. p. 12; "you can't use State laws to run your courtroom," "state laws are prohibited I believe by a couple of the amendments, of the Bill of Rights," and "Indiana can't have a constitution," 9/17/15 Tr. p. 5, 7; "If I'm found guilty, am I going to be executed?" 10/26/15 Tr. p. 15; objecting to the proceeding based on "Mayberry [Marbury] vs. Madison" and arguing that "judicial immunity [is] unconstitutional," 10/27/15 Tr. p. 9-10; and pointing out to a testifying officer that "treason is punishable by death," *id.* at 57.

[18] While some of Sturdivant's statements were undeniably strange, and she clearly lacked the legal skills of an experienced criminal defense attorney, this is not the stuff of "severe mental illness" under *Indiana v. Edwards*. In that case, in which the trial court's insistence on representation by counsel was ultimately affirmed by the Indiana Supreme Court, the evidence showed:

> Edwards was evaluated by several mental health professionals
> from 1999 through 2004 and was diagnosed at various points in

time with schizophrenia of an undifferentiated type, disorganized type schizophrenia, a delusional disorder, and a personality disorder. Edwards's psychiatric evaluations reveal that he experienced hallucinations and delusions, and that he manifested disorganized thought processes and impaired verbal communication. Several psychiatric reports concluded that Edwards was not competent to stand trial in the first instance, let alone represent himself.

*Edwards v. State*, 902 N.E.2d at 827. Here, there was no such evidence before the trial court. Most notably, there is no evidence Sturdivant has ever been evaluated by a mental-health professional, let alone diagnosed with a mental illness. And to the extent that there were some indicators of mental illness, they certainly were not sufficient to outweigh Sturdivant's explicit and repeated requests to waive counsel and represent herself.[1]

[19] Sturdivant also argues that even if her odd statements and legal arguments did not demonstrate severe mental illness that rendered her incompetent to represent herself, they were sufficient to prompt a further inquiry by the trial court—especially in light of the fact that the trial court itself later expressed its belief that "there may be some undiagnosed mental illness." 11/23/15 Tr. p.

---

[1] Sturdivant notes that she lacked "the knowledge and skills necessary to conduct a trial defense." Appellant's Br. p. 33. If she is suggesting that the trial court should have appointed counsel for her on this basis, she is incorrect. A court cannot deny a defendant the right of self-representation based on the defendant's lack of legal skills, experience, or knowledge. *See, e.g., Faretta*, 422 U.S. at 835 ("We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.").

15. She contends that the trial court would have learned that she was court-ordered to undergo psychiatric evaluations in two previous criminal cases—at the State's request in the first case, at her own attorney's request in the second—and that this additional information would have caused the trial court to insist on representation by counsel in this case.

[20] We agree that, under the circumstances, some further probing by the trial court would have been appropriate. *See Dowell*, 557 N.E.2d at 1067 (explaining that trial court should inquire into defendant's mental capacity "if there is any question as to the defendant's mental state"). However, even assuming that the trial court would have discovered the existence of the prior court orders, we cannot agree that knowledge of those orders would have led the trial court to find Sturdivant incompetent to represent herself. First, those orders were issued in late 2005 and early 2006, more than eight years before the filing of the charges at issue here. Second, the ordered evaluations were never actually conducted, so there is no way of knowing what they would have revealed. And third, if the court would have found out about the orders in those cases, it also would have learned that the first case was eventually dismissed based on Sturdivant's pro se motion to suppress and that the court in the second case vacated the evaluation order at Sturdivant's request. In short, Sturdivant was not prejudiced by the trial court's failure to inquire into her background.

[21] We stress once again that trial courts are in the best position to assess the competency of criminal defendants and the knowingness and intelligence of waivers of the right to counsel and that we can only reverse a trial court's

determination if it was clearly erroneous. *See Edwards v. State*, 902 N.E.2d at 824; *Jackson*, 868 N.E.2d at 503. Here, the trial court had numerous opportunities to converse with and observe Sturdivant during more than a year of pretrial hearings. Sturdivant does not direct us to any facts that the trial court knew or could have discovered that would have supported a finding of severe mental illness. Therefore, we cannot say that the trial court's decision to allow Sturdivant to represent herself was clearly erroneous.

[22] Affirmed.

Baker, J., and Najam, J., concur.