## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 07 2018, 8:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Daryl Newman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 7, 2018

Court of Appeals Case No.
18A-CR-285

Appeal from the Marion Superior Court

The Honorable Stanley Kroh, Magistrate

Trial Court Cause No.
49G03-1710-F2-39272

**Bailey, Judge.**

# Case Summary

Daryl Newman ("Newman") appeals his conviction for burglary as a Level 2 felony.[1]  He raises one issue on appeal which we restate as whether the trial court committed clear error when it allowed him to waive legal counsel and represent himself.

We affirm.

# Facts and Procedural History

On October 6, 2017, Jeffrey Cummings ("Cummings") was at his residence in Indianapolis, loading items into his vehicle that was parked in his detached garage.  The large garage door was closed and Cummings used the service door to access the garage.  Cummings left the service door of the garage open and went into his house to shower.  As he was shaving, Cummings heard a signal from his home security system, indicating that the back door to his house, which faced the garage, had been opened.  Cummings went downstairs and, when he stepped out of his back door, he saw a man standing inside the doorway of his garage.  The man, later identified as Newman, had short hair and wore khaki pants and a black shirt.

---

[1]  Ind. Code § 35-43-2-1.

[4] Newman then walked towards Cummings and Cummings noticed a scar on Newman's face. Newman said, "I don't want any problems." Tr. Vol. II at 150. Newman then walked onto the patio, and, when he was about two feet away from Cummings, he pulled out a gun and said, "I don't want any f---ing problems." *Id*. Cummings said, "Just go," and then ran inside the house and locked the back door. *Id*.

[5] Cummings ran upstairs and called 9-1-1. He then went back downstairs and saw that his patio door was opening. Newman, while holding a gun, walked into Cummings's house through the patio door and said, "I came back to take care of a f---ing problem." *Id*. at 154-55. Cummings ran out the front door and to the home of his next-door neighbor, Linda Anderson ("Anderson"). Anderson was on the phone with 9-1-1, and she handed Cummings the phone. The police arrived a few minutes later. Cummings described Newman to the officers as a black male wearing loose fitting khaki pants and a loose fitting black shirt, and he said that he had confronted Newman inside Cummings's house. The police went through all three floors of the house but did not see Newman.

[6] While the police were at Cummings's house, Robert Olson ("Olson"), who lived one street away from Cummings, called 9-1-1 about a suspicious person who he described as a black male with a black shirt. Olson had seen the man, later identified as Newman, jump over a neighbor's fence, approach the house, and try to open the door. Then, while on the phone with the police, Olson

observed Newman sit down on the curb of the street behind a parked white Jeep.

[7] The two officers drove from Cummings's house to Olson's house, and Olson directed them to where Newman was sitting on the curb. The police handcuffed Newman and then located a gun on top of the rear, passenger-side tire of the Jeep next to which Newman had been sitting. The police took Cummings to Newman's location, a block behind Cummings' house, and Cummings identified Newman as the individual he had seen inside his house with a gun. Later, Newman's fingerprints were found on the gun and the window frame of the vehicle that was in Cummings's garage.

[8] On October 12, 2017, the State charged Newman with burglary as a Level 2 felony; carrying a handgun without a license, as a Class A misdemeanor;[2] and pointing a firearm, as a Level 6 felony.[3] On October 12, 2017, the court appointed a public defender to represent Newman. Newman requested a speedy trial, and the court scheduled a trial for December 14, 2017. Public defender, Phillip Riley ("Attorney Riley"), entered an appearance on October 13, 2017.

[9] On December 11, 2017, Attorney Riley withdrew, and Attorney Daniel Grove ("Attorney Grove") entered his appearance as conflict counsel. The same day,

---

[2] I.C. § 35-47-2-1.

[3] I.C. § 35-47-4-3.

at a status hearing, Attorney Grove advised the trial court that he had received Newman's file that morning and that he did not have sufficient time to prepare for the December 14 trial. Attorney Grove requested a continuance and the State joined in that request due to outstanding discovery issues. Newman, who was present at the hearing, stated that he objected to a continuance and that he wished to represent himself if Attorney Grove could not be prepared for the December 14 trial. Newman stated that he waived his right to counsel, that he invoked his "*Faretta*"[4] rights, and that he was "more than capable" of representing himself. Tr. Vol. II at 6.

[10] The trial court advised Newman that he had the right to be represented by counsel and that if he could not afford one, one would be appointed for him. The court also stated that Newman had "a very good and experienced lawyer" sitting next to him and that he should reconsider his speedy trial request in light of the fact that his attorney was not ready for trial. *Id*. The trial court stated that "[i]f this was a misdemeanor, that might be one thing," but because this was a Level 2 felony, Newman's "exposure [was] significant." *Id*. at 6-7. The trial court advised Newman that, although he had the right to represent himself, it was in his best interest to have the benefit of a lawyer who had experience and training and could protect his legal rights.

---

[4] *Faretta v. Cal.*, 422 U.S. 806 (1975) (holding a criminal defendant's Sixth Amendment right to counsel includes a right to waive assistance of counsel and represent oneself).

[11]     The trial court then advised Newman that, if he represented himself, he would be solely responsible for jury selection, making opening and closing statements, arguments, objections, and motions, and that he would be responsible for issuing subpoenas for witnesses. The court further advised Newman that he would have to comply with the Indiana Rules of Evidence and that he would be responsible for preserving issues for appeal. The court also stated that Newman would be at a disadvantage because the State was represented by an attorney and that it would be awkward for Newman to elicit testimony from himself. The court appointed standby counsel but explained to Newman that standby counsel could only participate in the trial actively if the court so ordered and that standby counsel might not be prepared to take over the case if Newman changed his mind.

[12]     The trial court asked Newman if he was aware of the penalty range, and Newman said that he was. The court also advised Newman that there could be lesser-included offenses or mitigating circumstances. Finally, the trial judge advised Newman that he had never seen self-representation work out well. However, Newman stated that he did not want to be in jail until the next trial setting, and he expressed frustration with past trial delays in different criminal proceedings in the same court. He stated that, based on the pattern of trial delays in his past and current criminal cases, he "believe[d] in [his] heart that this is some kind of trickery," involving defense counsel working with the State. Tr. Vol. II at 15.

[13]     After receiving additional encouragement from the court to accept legal counsel, Newman still maintained that he wanted to go to trial on December 14, and represent himself. Newman stated that he had a GED and some college education. He also stated that no one had threatened him or done anything to make him go to trial representing himself. Newman added that he was not willing to sit in jail on a $100,000 bond for something he had not done. He informed the judge that all he needed was the ability to use the law library at the jail. After numerous additional warnings from the trial court about the risks of self-representation, Newman stated again that he wanted to go to trial on December 14. The trial court gave Newman a written advisement regarding self-representation, and Newman stated that he understood it.

[14]     On December 14, the trial court again discussed the advisements of the document Newman had previously reviewed, styled "The Court Order Regarding Defendant's Request to Proceed Pro Se," and again advised Newman that Attorney Grove was there in a standby counsel capacity only and could not participate actively in the trial. Newman testified that he understood the advisements of the court. The trial court again went through lengthy advisements about the pitfalls of self-representation, told Newman the range of penalties he faced, and advised him that the State had an eyewitness who saw him inside the house with a firearm. Newman testified that he was not currently suffering from any mental disability and that he had never been treated for any such disability. Newman also stated that he had not been in special education at school. The trial judge stated that he thought Newman

might be in denial about his case and once again asked Newman if he was sure he wished to represent himself. Newman again stated that he still wished to represent himself.

[15] Newman's case then proceeded to the jury trial, with Newman representing himself. The jury found Newman guilty as charged. On January 9, 2018, the trial court sentenced Newman to twenty years on the burglary count and vacated the other convictions. This appeal ensued.

# Discussion and Decision

[16] Newman contends the trial court violated his rights under the federal and state[5] constitutions when it allowed him to waive counsel and represent himself.[6] A defendant's Sixth Amendment right to counsel is essential to the fairness of a criminal proceeding. *Drake v. State*, 895 N.E.2d 389, 392 (Ind. Ct. App. 2008)

---

[5] Article 1, section 12 of the Indiana Constitution, cited by Newman, requires the same due process analysis as a federal due process claim. *Gingerich v. State*, 979 N.E.2d 694, 710 (Ind. Ct. App. 2012), *trans. denied*. And Article 1, section 13 of the Indiana Constitution, also cited by Newman, provides "no broader right to self-representation of mentally impaired persons" than that guaranteed by the Sixth Amendment. *Edwards*, 902 N.E.2d at 828.

[6] Newman also alleged a violation of Article 1, section 37, of the Indiana Constitution ("Slavery and involuntary servitude prohibited"), but developed no corresponding argument; therefore, that claim is waived. Ind. Appellate Rule 46(A)(8).

In addition, Newman contends that the trial court erred by failing to conduct a competency hearing under Indiana Code Section 35-36-3-1. However, that statute's specific procedural requirements relate to competency to stand trial, not competency to waive counsel and represent oneself. *See Campbell v. State*, 732 N.E.2d 197, 202 (Ind. Ct. App. 2000) (citing *Brewer v. State*, 646 N.E.2d 1382, 1384 (Ind. 1995)) (holding a competency hearing is required under the statute only when the trial court has reasonable grounds to believe that the defendant lacks "the ability to consult rationally with counsel and factually comprehend the proceedings against him").

(citing *Gideon v. Wainwright*, 372 U.S. 335, 344–45 (1963)). Implicit in the right to counsel is the right to self-representation. *Faretta*, 422 U.S. at 819.

[17] However, the right of self-representation is not absolute. "[A] trial court may deny a defendant's request to act pro se when the defendant is mentally competent to stand trial but suffers from severe mental illness to the point where he is not competent to conduct trial proceedings by himself." *Edwards v. State*, 902 N.E.2d 821, 824 (Ind. 2009) (citing *Indiana v. Edwards*, 554 U.S. 164 (2008)). The trial court's determination of competence to act pro se will be reviewed under the clearly erroneous standard.[7] *Id*. "Clear error is that which leaves us with a definite and firm conviction that a mistake has been made." *Austin v. State*, 997 N.E.2d 1027, 1040 (Ind. 2013). In reviewing for clear error, we neither reweigh the evidence nor determine the credibility of witnesses, but consider only the probative evidence and reasonable inferences supporting the judgment. *Id*.

[18] Mental competency is not a static condition; accordingly, it is to be determined at the time of trial. *Edwards*, 902 N.E.2d at 827. "[I]f a defendant is so impaired that a coherent presentation of a defense is unlikely, fairness demands that the court insist upon representation." *Id*. at 829. Thus, in *Edwards v. State*, for example, the defendant was found to be incompetent to represent himself— even though he was competent to stand trial—when several psychiatric

---

[7] The parties mistakenly rely on earlier cases which formulated the standard as abuse of discretion. *See id*. at 824, n.2.

evaluations concluded that he suffered from severe and pervasive mental illness, and that he was competent to stand trial only if he had the assistance of legal counsel. *Id*. at 826-27.

[19] Here, the record reveals no indication that Newman suffered from "severe mental illness" that made him incompetent to represent himself. *Id*. at 834. There is no evidence[8] that Newman was ever evaluated for mental illness, much less found to suffer from mental illness, and Newman himself testified that he did not have a mental disability and had never been treated for one in the past. Moreover, Newman's behavior during court proceedings did not indicate that he suffered from severe mental illness. Newman repeatedly asserted that he understood all the court's advisements[9] and that he was capable of, and wished to, represent himself. And while he may have "lacked a realistic view of his case," Appellant's Br. at 15, and made some odd assertions, that is not sufficient evidence of a severe mental illness rendering him incompetent to represent himself. *See Sturdivant v. State*, 61 N.E.3d 1219, 1225 (Ind. Ct. App. 2016) ("While some of Sturdivant's statements were undeniably strange, and she clearly lacked the legal skills of an experienced criminal defense attorney,

---

[8] Newman points out that the trial judge said he believed Newman was "in denial" about the strength of the State's case against him, and that the court wondered aloud at one point whether Newman was "of sound mental capacity." Tr. Vol. II at 42-43. However, those statements of the court were not evidence.

[9] Newman does not challenge the adequacy of the trial court's advisements regarding the dangers of self-representation and the benefits of counsel.

this is not the stuff of 'severe mental illness' under *Indiana v. Edwards.*"), *trans. denied*.

[20] The trial court was in the best position to observe Newman's demeanor and behavior in making its ultimate determination that he was competent to represent himself, and we will not reweigh the evidence or judge witness credibility, as Newman urges us to do. *Austin*, 997 N.E.2d at 1040. The trial court's decision to allow Newman to waive counsel and represent himself was not clearly erroneous.

[21] Affirmed.

Crone, J., and Brown, J., concur.