

FILED

Jan 30 2018, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender

Richard Denning
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Major Wilson,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

January 30, 2018

Court of Appeals Case No.
45A03-1707-PC-1466

Appeal from the Lake Superior
Court

The Honorable Diane R. Boswell,
Judge

Trial Court Cause No.
45G03-1608-PC-6

**Baker, Judge.**

[1] Major Wilson appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erroneously determined that he did not receive the ineffective assistance of appellate counsel. Finding that the post-conviction court erred in its determination and that Wilson did receive the ineffective assistance of appellate counsel, we reverse and remand for further proceedings.

## Facts

[2] On March 6, 2014, the State charged Wilson with ten counts of various crimes. On March 12, 2014, a public defender entered an appearance on Wilson's behalf. On July 10, 2014, Wilson filed a pro se motion asking the trial court to dismiss his public defender. A pre-trial hearing took place on July 30, 2014, during which the following exchange took place:

> Public Defender: . . . Judge, first thing, Mr. Wilson has asked and has actually filed with the Court, to strike the appearance of the Lake County Public Defender's Office altogether from this case.
>
> His friends have retained a firm down in Indianapolis that will not enter their appearance until our appearance is struck, so I'm asking—
>
> The Court: That's denied. He's set for trial.
>
> Public Defender: I—
>
> The Defendant: I'm ready for trial.

The Court: Pardon?

The Defendant: I'm ready for trial, ma'am.

The Court: Okay. Then we'll go to trial. If I—if I let you have substitute counsel at this point—

The Defendant: Well, can I file for pro se then. I'll do it myself. I'll represent myself.

The Court: No, no, you can't do that.

The Defendant: It's my right; right?

The Court: It's my decision. No, you don't have a right to represent yourself.

The Defendant: Well, I will not have him represent me then.

The Court: You don't have a right to represent yourself.

The Defendant: I won't have him represent me. I'm ready for trial.

The Court: You don't—you don't want [the public defender] to represent you?

The Defendant: No, I'm ready for trial.

The Court: Why is that?

The Defendant:  I just don't feel that he can give me reasonable representation during the trial. . . .

***

The Court:  Okay.  All right.  I can not require you to go forward with [the public defender], but I can require you to go forward on August 18th.

The Defendant:  I'm ready.

The Court:  So if you're—well, you may be ready, but you need to advise your people in Indianapolis that they got a trial set on August 18th.

The Defendant:  And if they're not here, I'll represent myself.

The Court:  No, I've already decided you can't represent yourself.

The Defendant:  I'm sorry, ma'am.  That's why I'm—I'm going for it.  I'm sorry, I mean, I have that right.  I know I have that right.

The Court:  No, you don't have that right to represent yourself.

The Defendant:  Yes, I do, ma'am.

The Court:  You do not.  Where did somebody tell you that? What right did you read?  Where did you read that?

The Defendant:  I have a right to represent myself; I know this.

The Court: You don't have that—see, that's why you can't represent yourself, because you don't know what rights you have.

Okay. [Public defender], we'll strike your appearance. . . .

Appellant's Ex. p. 18-22.

[3] A second pre-trial hearing took place on August 6, 2014, during which the following exchange took place:

The Defendant: My friend has not been able to come to an agreement on the lawyer fees.

The Court: Okay.

The Defendant: And they're still working on it, but as of right now, no—no agreement on my counsel, but I am still ready to go to trial.

The Court: Okay. You're ready to go to trial.

The Defendant: Yes, ma'am.

The Court: And I remember we had the discussion about your ability to represent yourself at that trial.

The Defendant: Yeah, Judge.

The Court: I think my ruling was that I didn't find you—that that was in your best interest.

\*\*\*

The Court:  . . . [Public defender]?

Public Defender:  Yes, Judge.

The Court:  Standby counsel?

Public Defender:  I will assist the Court in any way, shape, or form.

*\*\*\**

Public Defender:  If Mr. Wilson needs standby counsel, I'd be more than happy to stand in with him.

*Id.* at 4-6.  The following exchange then took place at the bench:

Public Defender:  Would you like me to be standby counsel for the trial, Judge? . . .

The Court:  He doesn't need you.

Public Defender:  I know that.  I know that.

The State:  But he doesn't want anyone, Judge, other than this alleged Indianapolis attorney . . . . He's made that very clear that he wants to go forward on the 18th.

The Court:  What is—

The State:  I think it's very—I think it's very—it would be very difficult for him to not have anybody.

The Court:  I think so too.

The State:  But he doesn't want the—my understanding of Mr. Wilson's point of view is he absolutely doesn't want [the public defender] but he also doesn't want anyone from the public defender's office . . . .

***

The State:  So, I mean, I believe he needs to be made aware that he will be held to the same standards that every lawyer is held to.

The Court:  This man can't present a cogent argument to me about [an unavailable witness]. . . .

The State:  I understand.

Public Defender:  Judge, I just want to suggest to the Court is for simply to inquire whether or not he would like to have standby counsel appointed, give him the choice on the record and—

The Court:  If he says "No," then—

Public Defender:  —and what will happen—

The Court:  —are you suggesting that I let this man go to—

Public Defender:  Judge.

The Court:  —trial without—

Public Defender:  The last—

The Court:  —lawyer?

*** 

Public Defender:  . . . I'd be more than happy to be standby counsel.  I think he's got a right to represent himself.  Clearly—

The Court:  Where does that say that?

The State:  Can I—if I can get my—I had a case.

The Court:  Oh, you looked it up, right?

Public Defender:  He does. . . . I'll be here.  I'll standby counsel.

The Court:  Okay.  Give me the cite.

Public Defender:  Stroud.

The State:  Stroud v. State of Indiana. . . . It's from the Supreme Court of Indiana, 2004, and in relevant part it says that the right of self representation is implicit in the Sixth Amendment of the constitution and in Article 1, Section 13 of the Indiana constitution.  However, a request to proceed pro se is a waiver of your right to counsel, and there are several requirements to invoke that right.  The defendant's request must be clear, unequivocal, and must be made within a reasonable time before the first day of trial.

***

The State: Also his choice must be made on the record knowing, intelligent, and voluntary.

*Id.* at 7-11. Following this discussion, the trial court told Wilson, "You may represent yourself." *Id.* at 11. The trial court then asked Wilson whether he would like to have standby counsel. Wilson agreed, stating, "I'll go by the Court's decision, go ahead let him [act] as standby." *Id.* at 13.

[4] A jury trial took place on August 20, 2014; the jury found Wilson guilty as charged. Wilson admitted to being an habitual offender. The trial court entered judgment only for Wilson's convictions of Class A felony criminal deviate conduct and Class B felony burglary while armed with a deadly weapon and found him to be an habitual offender. On November 5, 2014, the trial court imposed an aggregate sentence of 100 years.

[5] On direct appeal, Wilson's appellate counsel argued only that the State presented insufficient evidence to support Wilson's conviction for Class B felony burglary. We affirmed in a memorandum decision. *Wilson v. State*, No. 45A03-1412-CR-425, 2015 WL 4740412, at *1 (Ind. Ct. App. Aug. 11, 2015).

[6] On August 18, 2016, Wilson filed a pro se petition for post-conviction relief. On January 9, 2017, he filed, by counsel, an amended petition for post-conviction relief. An evidentiary hearing took place on March 9, 2017. Appellate counsel testified that she did not request transcripts from Wilson's pre-trial hearings in which his waiver of his right to counsel was discussed; she

also testified that she thought she should have requested them. During the hearing, the following exchange took place:

> The Court: One moment, please. [Appellate counsel], you did indicate that you had some correspondence with the petitioner, with Mr. Wilson; is that correct?
>
> Appellate Counsel: Yes.
>
> The Court: Do you recall what the basic substance or nature of the correspondence was?
>
> Appellate Counsel: Well, I don't want to—I'm concerned about the attorney/client privilege.
>
> The Court: It's waived by virtue of you having been alleged ineffective, and the case law is clear on that. So if you'd answer the question, please.
>
> Appellate Counsel: We discussed—he discussed problems that he had with his appointed counsel. And he addressed some issues that he considered for appeal, things that he wanted discussed.
>
> The Court: So problems with his appointed counsel, obviously prior to representing himself; is that correct?
>
> Appellate Counsel: Yes.
>
> The Court: And then I'm sorry, what was the other?

> Appellate Counsel: Just that—things that he thought might be pertinent for appeal.

> The Court: All right. . . .

PCR Tr. p. 10-11. On June 15, 2017, the post-conviction court denied Wilson's petition, making the following conclusions of law:

> 10. There is no constitutional requirement for appellate counsel to look beyond the trial record for issues on appeal, and it is incumbent upon the trial counsel to inform appellate counsel of any issues not preserved in the record. *Stephenson v. State*, 864 N.E.2d 1022 (Ind. 2007). In this case neither the Petitioner, who acted as his own counsel, nor his standby counsel . . . informed appellate counsel that there may be some question as to Petitioner's waiver of the right to counsel. Appellate counsel in this case, after reviewing the trial record and after consulting with the Petitioner chose to base her appeal on the insufficiency of the State's evidence with regard to the breaking element of the charge of Burglary. This was a strategic decision made with full knowledge that the Petitioner had proceeded *pro se*.

> 11. Appellate counsel's reliance on the trial record and her communications with the Petitioner in deciding to base her appeal on a claim of insufficiency of evidence was reasonable. There was nothing on the face of the record, nor any communication from [standby counsel] or Wilson, to alert appellate counsel to any potential issue concerning Wilson's self-representation. This court concludes that appellate counsel's performance did not fall below prevailing professional norms. Her performance under these circumstances does not constitute ineffective assistance of appellate counsel.

12. . . . [I]t bears note that Wilson has failed to sustain his burden of proof under post-conviction jurisprudence for other reasons as well. This is not a direct appeal. Wilson collaterally appeals his conviction. "The post-conviction process is open to prisoners to correct injustice in convictions." *Lingler v. State*, 644 N.E.2d 131, 133 (Ind. 1994). It seems to this court therefore, that in order to show prejudice Wilson must prove that he was, in fact, unaware of the risks and dangers of self-representation; that his waiver of the right to counsel was actually not knowing, intelligent and voluntary. . . . Wilson fails in this burden for the following reasons. First, Wilson fails to articulate of what risks and dangers he was ignorant. For example, if Wilson had claimed that he did not know he could open the door to admission of his prior criminal convictions by the way he posed questions at trial, this court could review whether the record or transcript of the jury trial supports his claim of ignorance and proves his ignorance prejudiced him. This court would be in a position to find that no prejudice resulted due to stand by counsel's assistance. . . . This leads us to the second reason Wilson fails to prove prejudice. Wilson does not stand in the position of other self-represented individuals because Wilson had the assistance of counsel throughout his pre-trial and trial proceedings. Although the trial court labeled [the public defender] "stand-by counsel" it bears consideration that "a rose by any other name would smell as sweet." As discussed previously, [standby counsel] made objections, argued motions, successfully, and provided consultation and instruction to Wilson throughout the proceedings. Therefore, Wilson had the assistance of an attorney. What dangers or risks of self-representation did Wilson actually suffer? Wilson does not tell us and the record does not reveal it. In short, Wilson comes before this court claiming that if his appellate attorney had raised a claim that the court failed to advise him of the risks and dangers of self-representation, he would have won the appeal. This is precisely the sort of framing of a claim our supreme court rebuked in *Lingler*. *Lingler v. State*, 644 N.E.2d at 133. Wilson fails to prove that there is anything unjust or invalid in his conviction.

13. Wilson has failed to prove that appellate counsel performed deficiently in failing to request transcription of the hearings at which the court granted him permission to represent himself. Even if counsel's performance had been found to be deficient, Wilson fails to prove that he was actually prejudiced—that his waiver of counsel was not knowing, intelligent and voluntary and that he suffered harm thereby.

Appellant's App. Vol. II p. 72-75 (footnote omitted). Wilson now appeals.

# Discussion and Decision

[7] Wilson argues that he received the ineffective assistance of appellate counsel when his appellate counsel failed to review the complete record of his trial proceedings and, as a result, failed to argue that Wilson's waiver of counsel was not knowing, voluntary, and intelligent.

# I. Standard of Review

[8] The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Shanabarger v. State*, 846 N.E.2d 702, 707 (Ind. Ct. App. 2006). On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.*

[9] A claim of ineffective assistance of appellate counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012).

[10] We give great deference to appellate counsel's decisions regarding which arguments to raise on appeal, which is "one of the most important strategic decisions of appellate counsel." *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012) (citing *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997)). Appellate counsel's performance, as to the selection and presentation of issues, will thus be presumed adequate unless found unquestionably unreasonable considering the information available in the trial record or otherwise known to the appellate counsel. *Id.* at 491-92. To succeed on this claim, the petitioner must show that the unraised issue was significant, obvious, and clearly stronger than the issue that was raised. *Bieghler*, 690 N.E.2d at 194.

## II. Defendant's Right to Self-Representation

Before reaching the substance of this appeal, we are compelled to address the trial court's lack of knowledge of basic constitutional law. During Wilson's pre-trial hearings, the trial court repeatedly told Wilson that he did not have a right to represent himself; stated that the trial court had decided that he could not represent himself; and asked Wilson where he heard or read about the right to represent himself. Appellant's Ex. p. 18-22. During a discussion at the bench, the trial court required a citation and case discussion from the State about a defendant's right to self-representation and how a defendant's request to waive his right to counsel must be made. In short, during Wilson's pre-trial hearings, the trial court appeared altogether uninformed about an individual's right to represent himself in court; about a trial court's duty to ensure that a defendant's waiver of right to counsel is made knowingly, voluntarily, and intelligently; and about a trial court's duty to advise a defendant about the dangers and disadvantages of self-representation. This egregious lack of knowledge presents a serious risk to the rights of defendants and demands that we direct the trial court to case law regarding a criminal defendant's fundamental rights. We advise the trial court to review this case law in depth and without delay.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel. *E.g.*, *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003). Implicit in the right to counsel is the right to self-representation. *E.g.*, *Drake v. State*, 895 N.E.2d 389, 392 (Ind. Ct. App. 2008). Before a defendant waives his right to counsel and proceeds pro se, the trial court must determine

that the defendant's waiver of counsel is knowing, voluntary, and intelligent. *E.g.*, *Jones*, 783 N.E.2d at 1138. "When a defendant asserts the right to self-representation, the court should tell the defendant of the 'dangers and disadvantages of self-representation.'" *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001) (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)). Although a trial court need not follow specific "talking points" when advising a defendant of the dangers and disadvantages of proceeding without counsel, a trial court must come to a "considered determination" that the defendant is making a knowing, voluntary, and intelligent waiver of his right to counsel. *Id.*

[13] To determine whether a knowing, voluntary, and intelligent waiver has occurred, an appellate court considers these four factors: (1) the extent of the trial court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. *E.g.*, *id.* at 1127-28. A lack of any advisement regarding the dangers and disadvantages of self-representation "weighs heavily against finding a knowing and intelligent waiver." *Id.* at 1128. The "importance of the right to counsel cautions that trial courts should at a minimum reasonably inform such defendants of the dangers and disadvantages of proceeding without counsel." *Id.*

# III.  Ineffective Assistance of Appellate Counsel

## A.  Counsel's Performance

[14]   In reviewing Wilson's claim of ineffective assistance of appellate counsel, we must first determine whether his appellate counsel's performance was deficient by not raising the issue of whether Wilson knowingly, voluntarily, and intelligently waived his right to counsel.

[15]   The post-conviction court stated that appellate counsel need not "look beyond the trial record for issues on appeal, and it is incumbent upon the trial counsel to inform appellate counsel of any issues not preserved in the record." Appellant's App. Vol. II p. 72-73 (discussing *Stephenson v. State*, 864 N.E.2d 1022, 1041 (Ind. 2007)).  More precisely, our Supreme Court has stated that it is "incumbent upon trial counsel to communicate to appellate counsel any matters *outside the record* that are appropriate for direct appeal."  *Stephenson*, 864 N.E.2d at 1041 (emphasis added).  The post-conviction court concluded that because neither Wilson nor his standby counsel informed appellate counsel of a possible issue with Wilson's waiver of his right to counsel, appellate counsel's review of the trial record—which did not include a review of Wilson's pre-trial hearings— and decision to appeal a sufficiency issue was based on strategy.

[16]   The inherent problem with the post-conviction court's analysis is that it assumes that the record from the actual trial is the only record an appellate attorney need review, and a transcript from another hearing would be outside the record.  But a record on appeal includes "*all* proceedings before the trial

court." Ind. Appellate Rule 2(L) (emphasis added). Therefore, transcripts from pre-trial hearings are part of the record on appeal. And because the pre-trial hearings are *part* of the record, rather than *outside* the record, neither Wilson nor his standby counsel was required to inform appellate counsel of the possible issue of Wilson's waiver of his right to counsel because it was preserved in the record of the pre-trial hearings. Appellate counsel had a duty to thoroughly review the entire record of Wilson's proceedings, including the transcripts from Wilson's pre-trial hearings.[1] *See, e.g., Woods v. State*, 701 N.E.2d 1208, 1221-22 (Ind. 1998).

[17] Accordingly, and contrary to the post-conviction court's conclusion, appellate counsel's decision to raise a sufficiency issue and not raise the issue of Wilson's waiver of his right to counsel was not a strategic one. The transcripts from the pre-trial hearings contained the only evidence to support a claim that Wilson did not knowingly, voluntarily, and intelligently waive his right to counsel. She did not raise the issue because she was not aware of it. *See Harris v. State*, 861 N.E.2d 1182, 1187 (Ind. 2007) (finding that, after appellate counsel testified that he did not read the record of trial proceedings that preceded the defendant's pleading guilty, appellate counsel did not employ a strategy and performed deficiently).

---

[1] To appellate counsel's credit, she conceded that she should have done so. We commend her for her candor.

[18] To prove deficient performance, the unraised issue must be significant. The issue of Wilson's waiver of his right to counsel is not just significant but of critical importance. "'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.'" *Poynter*, 749 N.E.2d at 1125-26 (quoting *United States v. Cronic,* 466 U.S. 648, 654 (1984)).

[19] The unraised issue must also be obvious. The post-conviction court concluded and the State argued that appellate counsel's performance was not deficient because she consulted with Wilson—a pro se defendant whose knowledge of and experience with the law is entirely unknown—and his standby counsel about his case. The post-conviction court stated that there "was nothing on the face of the record, nor any communication from [standby counsel] or Wilson, to alert appellate counsel to any potential issue concerning Wilson's self-representation." Appellant's App. Vol. II. p. 73. We reject this conclusion.

[20] The trial court's failure to ensure that Wilson's waiver of his right to counsel was knowing, voluntary, and intelligent was evident from a plain reading of the transcripts from the pre-trial hearings. Indeed, not only did the trial court fail to ask a single question to determine whether Wilson's waiver of counsel was knowing, voluntary, and intelligent,[2] and not only did the trial court fail to offer

---

[2] We acknowledge that the trial court briefly asked Wilson why he did not want his public defender to represent him. However, considering the context in which this question was asked and the lack of follow-up to Wilson's answer, we can hardly say that the trial court asked it with the intent to determine whether Wilson's waiver of his right to counsel was knowing, voluntary, and intelligent.

any advisement about the dangers and disadvantages of self-representation, but the trial court seemed wholly unaware of either Wilson's rights or its own duties. *See Reed v. State*, 856 N.E.2d 1189, 1197 (Ind. 2006) (finding that the failure to raise an issue where a plain reading of a statute demonstrated that the defendant was entitled to relief was sufficient to demonstrate that the unraised issue was significant and obvious from the face of the record).

[21] Moreover, although the State contends that "the record does not indicate that [appellate counsel] had reason to" request and review the transcripts from the pre-trial hearings, appellee's br. p. 12, considering that Wilson proceeded pro se and that the right to counsel is of critical importance to criminal defendants, appellate counsel had every reason to request and review the transcripts from the pre-trial hearings for this very issue.

[22] Further, the unraised issue was clearly stronger than the issue actually argued on appeal. On direct appeal, appellate counsel raised one issue: that the State did not present sufficient evidence to support Wilson's conviction for Class B felony burglary because the State failed to prove that Wilson "broke into [the victim's] apartment because no evidence was presented to establish how he might have entered the apartment." *Wilson*, slip op. at 2 (internal quotation marks and citation omitted). Appellate counsel did not challenge the sufficiency for Wilson's conviction of criminal deviate conduct, thereby conceding that Wilson was present in the apartment. The record showed that the apartment was on the second floor, that the apartment door had been shut and locked before Wilson entered the apartment, and that Wilson could not

have entered through a window. Based on these facts, the jury could have reasonably inferred that Wilson broke and entered the apartment. Burglary occurs when a person breaks and enters the dwelling of another person. Ind. Code § 35-43-2-1 (2014). Using even the slightest force to gain unauthorized entry, which can include opening an unlocked door or pushing a door that is slightly ajar, satisfies the breaking element of the crime. *Davis v. State*, 770 N.E.2d 319, 322 (Ind. 2002). Circumstantial evidence alone can prove the occurrence of a breaking. *Payne v. State*, 777 N.E.2d 63, 66 (Ind. Ct. App. 2002). The governing statute did not require the State to prove how Wilson broke and entered the apartment. There was, therefore, little to no chance of prevailing on this claim.

[23] It is readily apparent to us that a claim based on whether a defendant's waiver of his right to counsel was knowing, voluntary, and intelligent, in light of the trial court's failure to make a single inquiry of the defendant and failure to advise him as to the dangers and disadvantages of self-representation, is clearly stronger than the issue appellate counsel raised on appeal. Failure to review the transcripts and raise this issue on appeal falls below prevailing professional norms and therefore satisfies the first prong of *Strickland*.

## B. Prejudice

[24] Next, we must determine whether appellate counsel's performance prejudiced Wilson such that there is a reasonable probability that the result of his appeal would have been different but for appellate counsel's unprofessional error.

[25] Wilson argues that had appellate counsel raised the issue that his waiver of his right to counsel was not knowing, voluntary, and intelligent, his conviction likely would have been reversed. We agree. Time after time, our State's appellate courts have reversed judgments against defendants when the facts and circumstances did not establish that the defendants knowingly, voluntarily, and intelligently waived their rights to counsel. *E.g.*, *Poynter*, 749 N.E.2d at 1128-29 (reversing judgment against the defendant when nothing in the record indicated that the trial court had advised him of the dangers and disadvantages of self-representation or that he might have independently understood those dangers and disadvantages); *Hart v. State*, 79 N.E.3d 936, 941 (Ind. Ct. App. 2017) (reversing judgment against the defendant after finding that the defendant could not have knowingly and intelligently waived his right to counsel absent an advisement regarding the dangers and disadvantages of self-representation).

[26] Here, the transcript is clear on its face: the trial court did not advise Wilson of the risks of self-representation, let alone ask even one question to ascertain whether his waiver of his right to counsel was knowing, voluntary, and intelligent. Had appellate counsel raised this issue on appeal, it is highly likely that this Court would have reversed the judgment against Wilson and remanded for a new trial.

[27] Although the post-conviction court noted that Wilson "was granted permission to represent himself," appellant's app. vol. II p. 67, and "acted as his own counsel," *id.* at 72, the post-conviction court also wrote that

> Wilson does not stand in the position of other self-represented individuals because Wilson had the assistance of counsel throughout his pre-trial and trial proceedings. Although the trial court labeled [the public defender] "stand-by counsel" it bears consideration that "a rose by any other name would smell as sweet." As discussed previously, [standby counsel] made objections, argued motions, successfully, and provided consultation and instruction to Wilson throughout the proceedings. Therefore, Wilson had the assistance of an attorney. What dangers or risks of self-representation did Wilson actually suffer? Wilson does not tell us and the record does not reveal it.

*Id.* at 74. The post-conviction court seems to imply that, even though Wilson represented himself (as the post-conviction court noted earlier in its order), he could not have been prejudiced by the trial court's failure to fulfill its duty to ensure that he knowingly, voluntarily, and intelligently waived his right to counsel because he had able, active standby counsel.

[28] But the presence of standby counsel does not mean that Wilson gave up his right to represent himself or to control his case. Nor does the presence of standby counsel mean that Wilson was represented by an attorney. Standby counsel is not the same as, and does not confer the advantages of, full counsel because, even with standby counsel, a pro se defendant retains control over his case. *See Hill v. State*, 773 N.E.2d 336, 343 (Ind. Ct. App. 2002) (noting that a pro se defendant's right to control his case is eroded when standby counsel interferes with his right to present his case in his own way); *Jackson v. State*, 441 N.E.2d 29, 33 (Ind. Ct. App. 1982) ("Appointment of stand-by counsel is an appropriate prophylactic device when a defendant assumes the burden of

conducting his own defense."). In short, therefore, the presence of standby counsel for a pro se defendant does not remove—or in any way affect—the trial court's affirmative duty to ensure that a defendant who waives his right to counsel does so knowingly, voluntarily, and intelligently, and to ensure that the defendant is advised of the dangers and disadvantages of self-representation.[3]

[29] In sum, there was a reasonable probability that, but for appellate counsel's error, the result of Wilson's appeal would have been different. Wilson satisfied the second prong of *Strickland*.

[30] Appellate counsel's failure to review the pre-trial hearing transcripts and present an argument about Wilson's waiver of his right to counsel on direct appeal amounted to ineffective assistance. The post-conviction court's finding to the

---

[3] The post-conviction court further states that "Wilson comes before this court claiming that if his appellate attorney had raised a claim that the trial court failed to advise him of the risks and dangers of self-representation, he would have won the appeal. This is precisely the sort of framing of a claim our supreme court rebuked in" *Lingler v. State*, 644 N.E.2d 131 (Ind. 1994). Appellant's App. Vol. II p. 74-75. In *Lingler*, Lingler claimed that the prior convictions on which his habitual offender status was based were out of sequence. The Court of Appeals had found that Lingler was entitled to relief from his status as an habitual offender after he had presented his claim in terms of ineffective assistance of counsel. Our Supreme Court reversed, finding that Lingler had offered no evidence to support his claim or show that there was "anything unjust or untrue about the verdict" of his habitual offender status. *Lingler*, 644 N.E.2d at 133.

*Lingler* is simply irrelevant to determining whether Wilson suffered prejudice from his appellate counsel's deficient performance. Our Supreme Court stated that "the purpose of post-conviction relief is not simply to relitigate claims that might have been litigated on direct appeal. . . . Th[e] redesigning of the claim will not wash. The post-conviction process is open to prisoners to correct injustice in convictions." *Id.* at 132-33. Wilson's claim in his petition for post-conviction relief of ineffective assistance of appellate counsel could not have been brought on direct appeal; he did not "frame" or "redesign" his claim so that he could have another bite at the apple. Rather, through his petition, he sought to correct an injustice in his conviction, which is the very purpose of a petition for post-conviction relief.

contrary leaves us with a definite and firm conviction that a mistake has been made.

[31] The judgment of the post-conviction court is reversed and remanded for further proceedings.

Riley, J., and Brown, J., concur.