

FILED

Aug 20 2018, 10:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott L. Barnhart
Brooke Smith
Keffer Barnhart LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronnie Ricketts, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 20, 2018

Court of Appeals Case No.
18A-CR-444

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Pigman,
Judge

Trial Court Cause No.
82D03-1703-F2-1230

**Bradford, Judge**

# Case Summary

In March of 2017, Ronnie Ricketts, Jr., located his domestic partner Sarah Metcalf eating dinner with two men at an Evansville mission, one of whom Ricketts had told Metcalf not to see anymore. Ricketts told the two men that they were dead, retrieved two handguns from his vehicle parked outside, and shot out a window of the mission when he found the door barred. The State charged Ricketts with Level 2 felony burglary. In late November and early December of 2017, Ricketts requested that he be allowed to dismiss his public defender and continue *pro se*. After Ricketts explained to the trial court that he had been diagnosed with several mental illnesses and that his medications were no longer effective, the trial court denied Ricketts's request to proceed *pro se*. A jury convicted Ricketts as charged, and the trial court sentenced him to seventeen and one-half years of incarceration. Ricketts contends that the trial court erred in denying his request to represent himself and that his sentence is inappropriately harsh. Because we disagree with both contentions, we affirm.

# Facts and Procedural History

On March 2, 2017, Maurice Huffman, Huffman's mother, James Smith, and Metcalf were eating dinner together in the dining hall at the Evansville Rescue Mission. There were "a lot" of children volunteering in the Rescue Mission that day. Tr. Vol. II p. 235. Metcalf had had sexual intercourse with Smith on a single occasion, and Ricketts, the father of Metcalf's infant daughter and with whom she had been romantically involved for approximately four years, had

previously told Metcalf not to associate with Smith anymore. As the quartet was eating, Ricketts came into the hall, called Metcalf a "lying whore[,]" and told Huffman and Smith that if they did not leave her alone "[they] would be dead." Tr. Vol. II pp. 57, 176. According to Smith, Ricketts entered the hall; said "this is how it's f-ing going to be" to Metcalf; and told Smith and Huffman, "you are both going to die now[.]" Tr. Vol. II p. 67.

[2] Metcalf followed Ricketts outside as he retrieved two handguns from his vehicle. Despite Metcalf begging him to stop, Ricketts tried to reenter the Rescue Mission, and, when he discovered that he could not reenter through the door, shot out a window and stepped through. Smith ran to the kitchen and Hoffman ran out the back door and hid behind a dumpster. Ricketts searched for Smith and Hoffman without success, returned to his vehicle, and drove off. After a vehicular pursuit, police apprehended Ricketts in front of his home.

[3] Ricketts told police after his arrest that he and Metcalf had been together for four years and that he had gone to the mission to see if she was lying to him. Ricketts told an interviewer that

> [t]he first time when I went in, and I seen her with 'em, and I got pissed. I went back out to the truck got [the handguns]. They shut me out with the door—the wooden doors, so I shot the window out. I didn't shoot at nobody. I didn't hurt nobody. I shot the window out. Kick—pushed it through, and went through it and went after 'em.

State's Ex. 40. The interviewing detective asked Ricketts if he told both Smith and Huffman that he was going to kill them, to which Ricketts responded,

"You're damn right I did."  State's Ex. 40.  When the detective asked, "if you would have found them would you have shot them?", Ricketts replied, "Oh, yeah."  The detective then asked or stated, "You–you wanted to kill them[,]" to which Ricketts replied, "Yeah."  State's Ex. 40.  On March 6, 2017, the State charged Ricketts with Level 2 felony burglary.

[4]  At a hearing on November 28, 2017, Ricketts told the trial court that he wished to proceed *pro se* because trial counsel had agreed to delays in the case and had been unsuccessful in having his bail reduced.  The trial court denied Ricketts's request to proceed *pro se*.  At a hearing on December 4, 2017, Ricketts again indicated that he wanted to proceed *pro se*.  Ricketts's trial counsel indicated that Ricketts wanted to be added to the trial court's calendar because he wanted "to make a record that he wishes to proceed pro-se[,]" the hearing the previous week had been before a substitute judge, and "there's a stronger record that needs to be laid."  Tr. Vol. II p. 22.  The following exchange occurred:

> THE COURT:  Okay you do not want [trial counsel] to represent you?
>
> [Ricketts]:  No, sir.
>
> THE COURT:  Okay do you want to tell me why?
>
> [Ricketts]:  Not really a reason.  [J]ust that she hasn't been doing nothing.  I've been in here for nine months.  I've had [a] heart attack, and my health issues are pretty bad, and my other stuff's going on and—
>
> THE COURT:  Okay.
>
> [Ricketts]:  I don't think she's been doing what she should do to try and get me out.

THE COURT: Well it's not up to her whether you get out. That's up to the court. Uh, have you ever represented yourself before?

[Ricketts]: No, sir. This is the first time I've ever been in jail.

THE COURT: Okay. Well the—do you have any familiarity with the rules of evidence or the trial procedures, court procedures anything like that?

[Ricketts]: Not really. We got the law books in here though.

THE COURT: Do you understand that it's almost always unwise to represent yourself?

[Ricketts]: Yes, like I said, it's my first time, sir. I'm not—.

THE COURT: Okay. That throughout the trial the State of Indiana will be represented by an experienced legal counsel. I'm not sure in your case who that is, but someone who has legal training, and that they will, um, be they are representative. And that will be held—uh, I—the Court will be required, as a matter of law, to hold you to the same standards. I can't let you violate the rules of evidence, or trial procedure, or anything in that way—nature. You're going to have to present your case according to the law. You understand that?

[Ricketts]: Yes, sir.

THE COURT: Um, that I can't give you any other special indulgence. I can't give you—change your sentence because you represented yourself. You can't get a more serious sentence, but you also can't get a lesser sentence. Do you understand that?

[Ricketts]: Yes, sir.

THE COURT: Lawyers can—have been trained on how to question witnesses, cross-examine witnesses, gather evidence, objective [*sic*] evidence, identify evidence that might be harmful, or illegally obtained by the government, and move[] to suppress or exclude that evidence in ways that I'm pretty confident you're not capable of right now. Do you understand that?

[Ricketts]: Yes, sir.

THE COURT: Um, have you ever—have you ever been found mentally incompetent for any reason?

[Ricketts]: I got out of the military on mental health issues.

THE COURT: Okay what—what generally speaking what were they?

[Ricketts]: Uh, depression, personality disorder, and PTSD.

THE COURT: Do you currently take medication for that?

[Ricketts]: Yes, sir. I've been seeing a therapist—a psychiatrist for—well off and on for twenty years. But I've also been seeing them at the VA for the last six years.

THE COURT: Okay.

[Ricketts]: On a regular basis.

THE COURT: All right. Does any of that medication interfere with your thinking?

[Ricketts]: It don't—it hasn't been helping, the stuff I've been taking. I told my therapist before this happened that my medicine wasn't working and I was needing to get something stronger, and then this happened.

THE COURT: Okay.

[Ricketts]: Also on pain medication and about six other different medications. Anxiety medication, and stuff like that too.

THE COURT: Is that going to interfere with your ability to, uh, represent yourself? Concentrate on the case? Do the research that's necessary? Look up, you know, the relevant law and facts, and—?

[Ricketts]: It could sir. I'm not for sure. Like, I said I've never had to do anything like this before.

THE COURT: Well if there's a possibility that that's going to interfere, how are you going to do that if you're representing yourself?

[Ricketts]: I have no idea sir.

THE COURT: Okay.

[Ricketts]: I will just have to do the best I can.

THE COURT: What makes you think you—um, how far did you go in school?

[Ricketts]: I graduate[d] high school and took a couple years of automotive school at Ivy Tech College.

THE COURT: Okay can you—okay. And how long were you in the arm—were you in the army?

[Ricketts]: Yes sir. I was Army Military Police for three years before I got out on the medical, and then I got back and went into the Indiana National Guard for six years and got out in 2004.

THE COURT: Okay. Have you ever seen a final argument or an opening statement given in a criminal case?

[Ricketts]: We did it in high school once, sir.

THE COURT: All right. Have you—

[Ricketts]: It's been a while back.

THE COURT: Have you ever been in a courtroom for any reason?

[Ricketts]: No sir.

THE COURT: All right I'm going to deny your request Mr. Ricketts. I'm not confident you can represent yourself adequately. You're entitled to a fair trial, uh, it's been my experience that most people who represent themselves just screw up their case big time. That generally speaking, would not be enough. If that was all there was to it I'd probably let you go ahead and represent yourself, but the mental problems, the emotional issues, those kind of things will intensify the pressure as a trial gets closer. Um, trials are [an] immensely [] nerve-racking experience for everyone involved, and that will not help whatever mental condition or emotional problems that you are suffering from. I'm afraid that you would—might for lack of a better term, come un- come undone during the trial and then end

> up either saying or doing something that would devastate your
> case.

Tr. Vol. II pp. 22–27. The case proceeded to trial on January 8 and 9, 2018, after which the jury found Ricketts guilty as charged.

[5] On February 9, 2018, the trial court held a sentencing hearing. The trial court found Ricketts's basically-law-abiding life before the instant offense to be mitigating. The trial court found the facts and circumstances of the offense to be aggravating and sentenced Ricketts to the advisory term of seventeen and one-half years of incarceration.

# Discussion and Decision

## I. Right to Self-Representation

[6] Ricketts contends that the trial court erroneously denied him his right to self-representation. "The Sixth Amendment guarantees a mentally competent defendant the right to represent himself in a criminal trial, no matter how foolish that choice may seem." *Imani v. Pollard*, 826 F.3d 939, 941 (7th Cir. 2016) (citing *Faretta v. California*, 422 U.S. 806 (1975)). The trial court "must determine that the defendant's waiver of counsel is knowing, voluntary, and intelligent." *Wilson v. State*, 94 N.E.3d 312, 320 (Ind. Ct. App. 2018). There are no "talking points" a trial court is required to use, but it must advise a defendant of the "dangers and disadvantages of proceeding without counsel" and "come to a 'considered determination' that the defendant is making a knowing, voluntary, and intelligent waiver of his right to counsel." *Id*. at 320–

21 (citing *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001)). However, if the request is timely, a trial court cannot deny a competent individual the right to represent himself. *Imani*, 826 F.3d at 941.

[7] That said, "a trial court may deny a defendant's request to act pro se when the defendant is mentally competent to stand trial but suffers from severe mental illness to the point where he is not competent to conduct trial proceedings by himself." *Edwards v. State*, 902 N.E.2d 821, 824 (Ind. 2009). This determination "involve[s] a fact-sensitive evaluation of the defendant's capabilities that the trial court is best-situated to make." *Id.* "Indeed, the [United States] Supreme Court noted in [*Indiana v. Edwards*, 554 U.S. 164 (2008),] that 'the trial judge […] will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.'" *Id.* (quoting *Edwards*, 554 U.S. at 177). A trial court's "determination of competence to act pro se will be reviewed under the clearly erroneous standard." *Edwards*, 902 N.E.2d at 824.

[8] Keeping in mind the difficult task Ricketts has on appeal, we conclude that he has failed to establish clear error. The record indicates that Ricketts was suffering from many severe mental illnesses prior to trial and that his treatments were no longer effective. Ricketts told the trial court that he had been discharged from the military for his mental health issues; was suffering from depression, personality disorder, PTSD, and anxiety; and had been receiving psychiatric care for twenty years with regular care for the past six. Significantly, Ricketts also indicated that his medications had ceased to be

effective before the events of March 2, 2017, and there is no indication that that situation had been remedied during his incarceration. Ricketts admitted that his mental health issues could interfere with his ability to represent himself and that he had "no idea" how he would be able to represent himself if they did. Tr. Vol. II p. 26. Ricketts's representations regarding his inadequately-treated mental illnesses and his admissions as to their potential effect on his ability to defend himself support a conclusion that he was not competent to proceed *pro se*. Moreover, the trial court was in the best position make a first-hand evaluation of Ricketts's mental state based on its interactions with him. Given the trial court's familiarity with Ricketts and its opportunity to observe him in person, we are doubly reluctant to second-guess its conclusion that he was not competent to represent himself at trial.

[9] The record indicates that the trial court clearly understood that it could not deny Ricketts the right to represent himself simply because it would be a bad idea. In this case, however, there was more, as Ricketts had mental and emotional health issues that the trial court concluded would likely intensify as trial approached, generating a distinct possibility that Ricketts would come "undone" under the pressure. Based on the record before the trial court, none of this approaches the level of clear error. Under the circumstances of his case, Ricketts has failed to establish that the trial court's decision in this regard was clearly erroneous.

# II. Sentence

[10] Ricketts contends that his seventeen-and-one-half-year advisory sentence for Level 2 felony burglary is inappropriately harsh. We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Indiana Code section 35-50-2-4.5 provides, in part, that "[a] person who commits a Level 5 felony […] shall be imprisoned for a fixed term of between ten (10) and thirty (30) years, with the advisory sentence being seventeen and one-half (17 ½) years."

[11] The nature of Ricketts's crime weighs against his sentence being inappropriate. As the trial court observed, it was only necessary for Level 2 felony burglary that Ricketts be armed with a deadly weapon when he broke and entered the Rescue Mission; thus, firing one of his handguns goes beyond the acts necessary to prove the crime with which he was charged. As for the nature of the

Ricketts's actions, he, motivated by jealousy and admittedly with the intent to kill Smith and Huffman, armed himself with two loaded handguns and shot his way into the Rescue Mission when he found the way barred. Smith and Huffman, as well as the many children volunteering in the Rescue Mission at the time, scrambled for their lives. Although Ricketts fortunately did not injure anybody, he broke into the Rescue Mission fully intending to shoot Smith and Huffman, and his shot through the window certainly could have injured anyone who might have been nearby. Moreover, Ricketts's offense has had an ongoing negative effect on the Rescue Mission and those that it serves, many of whom are homeless and have no other place to go. Following Ricketts's offense, many groups that had planned to send children to volunteer at the Rescue Mission have cancelled, and parents of some child volunteers indicated that they would not be returning. The egregious nature of Ricketts's offense, which was far more serious than needed to support the charge against him, justifies his advisory sentence.

[12] As for Ricketts's character, the egregious and very dangerous nature of his offense does not speak well of it. Despite several witnesses testifying at sentencing on Ricketts's behalf, generally indicating that he was a good father, neighbor, and/or friend, his character was such that he was willing to sacrifice the well-being of his infant daughter to exact revenge on Smith and Huffman. Although we also acknowledge that Ricketts has no prior felony convictions, we cannot say that his past ability to more-or-less follow the law is sufficient to

render his seventeen-and-one-half-year sentence inappropriate. Ricketts has failed to establish that his sentence is inappropriate.

[13] We affirm the judgment of the trial court.

Bailey, J., and Mathias, J., concur.