## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 11 2019, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Office of the Lake County Public
Defender – Appellate Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary L. Allgood, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 11, 2019 <br><br> Court of Appeals Case No. 18A-CR-1916 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Samuel L. Cappas, Judge <br><br> Trial Court Cause No. 45G04-1712-F2-16 |

**Mathias, Judge.**

[1]     Gary Allgood ("Allgood") was convicted in Lake Superior Court of Level 5 felony robbery and Level 6 felony intimidation and ordered to serve an

aggregate six-year sentence, with five years and three months to be served in the Department of Correction and nine months to be served in community corrections. Allgood appeals and raises two issues, which we restate as:

I. Whether Allgood knowingly, voluntarily, and intelligently waived his right to counsel; and,

II. Whether his aggregate six-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

On December 4, 2017, at approximately 4:30 p.m., Miriam Eckenrode ("Miriam") was grocery shopping at Aldi in Hammond, Indiana. Miriam noticed Allgood in the store parking lot as she walked into Aldi. Allgood was walking back and forth while speaking on his cell phone.

Miriam completed her grocery shopping and returned to her vehicle, placing her groceries on the front passenger seat. As Miriam began to sit down in the driver's seat of her vehicle, Allgood opened the front passenger side door and leaned into the car. Allgood had his hand in his pocket and pointed at Miriam. He threatened Miriam and stated, "don't make me blow your brains out here in this parking lot." Tr. Vol. II, p. 104. Miriam believed that Allgood had a weapon in his pocket.

Miriam tried to give Allgood her purse, but he refused to take it. Instead, Allgood demanded that Miriam drive him to an unknown location. Miriam

told Allgood to take her car. Allgood threatened her again and then told her to shut her car door. *Id*. at 108.

[5] Miriam saw a woman nearby, later identified as Meiko Cook ("Cook"), loading groceries into her car. Miriam got out of her vehicle and ran toward Cook yelling "call the police." *Id*. at 110. Allgood followed Miriam calling her "Alice." *Id*. at 163. Allgood told Cook that Miriam was under the influence of drugs and that she owed him money. *Id*. at 164. Miriam gave Allgood a few dollars, told Cook to run, and then she walked into Aldi. Allgood apologized to Cook and told her that "Alice" had taken Xanax and he just wanted his money. *Id*. at 165. Allgood then walked away from Aldi toward Walmart.

[6] Cook went back inside Aldi to return her cart. She saw Miriam, asked if she was okay, and learned that the police had been called. Both Miriam and Cook gave a description of Allgood to the police. A police officer found a person matching Allgood's description nearby. Miriam and Cook were taken to Allgood's location, and they both identified Allgood as the man in the parking lot who demanded money from Miriam.

[7] On December 6, 2017, the State charged Allgood with Level 2 felony attempted kidnapping, Level 5 felony robbery, Level 6 felony intimidation, and Class A misdemeanor theft. On June 5, 2018, during a pre-trial conference, Allgood informed the trial court that he wanted to proceed pro se. The trial court advised Allgood of the disadvantages of self-representation and informed him

that he would be held to the same standard as an attorney. The court urged Allgood to speak with his attorney and think about whether to proceed pro se.

[8] Allgood then filed a written motion to proceed pro se, and the trial court held a hearing on his motion on June 7, 2018. The court advised Allgood that

> if you're going to represent yourself at that trial, I have to tell you that you are held to the same standards as that of an attorney. So you have to know trial procedure. You have to know . . . the difference between direct examination and cross examination. I mean, leading and non-leading questions, the appropriate objections. You have to follow the Rules of Evidence. I am not required to give you any leeway, because you don't have the same legal education as the prosecuting attorney will have. [The prosecutor] has been here for quite some[]time, and he is very thorough. So in your presentation of this case, I don't know if you're going to know how to object, when to object. If he's introducing evidence, if you know the proper foundation. If you know how to question witnesses and engage in proper cross examination and impeachment. . . . If you've got great evidence and you don't know how to get it out, that's too bad for you. . . . I can't imagine that you not having gone to law school or studied or been trained in trial advocacy could even come close to matching an attorney with the lowest level of skill.

Tr. Vol. II, pp. 26–28. After Allgood continued to insist on proceeding pro se, the trial court granted his motion. The court also appointed Allgood's former attorney as standby counsel.

[9] A jury trial was held on June 11–12, 2018. The jury acquitted Allgood of attempted kidnapping, but he was found guilty of the robbery, intimidation, and theft charges.

At the July 10, 2018 sentencing hearing, the trial court merged the theft and robbery charges. The court then found the following aggravating circumstances: 1) the victim's harm, injury, and loss were greater than the elements necessary to prove the commission of the offense, 2) Allgood's criminal history, including eight prior felony convictions, and 3) that Allgood is in need of correctional rehabilitative treatment that can only be provided by a penal facility. Tr. Vol. III, p. 101. The trial court found that Allgood's attempt to avail himself of two jail programs was the only mitigating circumstance. Allgood was ordered to serve concurrent terms of six years, with nine months to be served in work release, for the robbery conviction and two and one-half years for the intimidation conviction. Allgood now appeals.

## Waiver of Counsel

Allgood claims that the trial court "failed to perform a sufficient analysis of whether the waiver of his constitutional right to counsel was made knowingly, voluntarily, and intelligently." Appellant's Br. at 7. A defendant in a criminal case has a constitutional right under the Sixth Amendment to proceed without the assistance of counsel. *Faretta v. California*, 422 U.S. 806, 821 (1975) (holding that "[t]he Sixth Amendment . . . implies a right of self-representation"). The trial court is in the best position to assess whether a defendant has the ability and willingness to proceed pro se. *See Edwards v. State*, 902 N.E.2d 821, 824 (Ind. 2009); *Poynter v. State*, 749 N.E.2d 1122, 1128 (Ind. 2001).

[12] The trial court "must determine that the defendant's waiver of counsel is knowing, voluntary, and intelligent." *Wilson v. State*, 94 N.E.3d 312, 320 (Ind. Ct. App. 2018). There are no "talking points" a trial court is required to use, but it must advise a defendant of the "dangers and disadvantages of proceeding without counsel" and "come to a 'considered determination' that the defendant is making a knowing, voluntary, and intelligent waiver of his right to counsel." *Id*. at 320–21 (citing *Poynter*, 749 N.E.2d at 1126).

[13] To determine whether a waiver of trial counsel was made voluntarily and intelligently, our court must consider (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence of record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. *Hopper v. State*, 957 N.E.2d 613, 618 (Ind. 2011). We review the trial court's conclusion that a defendant knowingly and voluntarily waived the right to counsel de novo. *Hart v. State*, 79 N.E.3d 936, 940 (Ind. Ct. App. 2017).

[14] Here, the trial court held two hearings concerning Allgood's request to proceed pro se. At both hearings, Allgood was advised of the dangers of self-representation, and the court repeatedly reminded Allgood that attorneys have specialized training that Allgood lacks. For example, the court stated:

> Now, if you're going to represent yourself at that trial, I have to tell you that you are held to the same standards as that of an attorney. So you have to know trial procedure. You have to

know . . . the difference between direct examination and cross examination . . . , leading and non-leading questions, the appropriate objections. You have to follow the Rules of Evidence. I am not required to give you any leeway, because you don't have the same legal education as the prosecuting attorney will have. Mr. Bruno has been here for quite some[]time, and he is very thorough. So in your presentation of this case, I don't know if you're going to know how to object, when to object. If he's introducing evidence, if you know the proper foundation. If you know how to question witnesses and engage in proper cross examination and impeachment.

Tr. Vol. II, pp. 26–27.

[15] The trial court advised Allgood if he did not understand how to impeach a witness or establish a foundation for admitting exhibits into evidence, he should not represent himself at trial. *Id.* at 13. And the court repeatedly instructed Allgood that he would be held to the same standard as an attorney.

[16] At the first hearing, the trial court advised Allgood to think about his request to proceed pro se and to seek advice from his appointed counsel. The trial court questioned Allgood about his mental health and determined that he does not suffer from any mental disease or defect. *Id*. at 14. Allgood informed the court that he graduated from high school and attended three years of college. And Allgood has significant experience with the criminal justice system. At the second hearing, the trial court granted Allgood's motion to proceed pro se after he continued to insist that he wanted to represent himself.

[17] Allgood complains that he should not have been permitted to proceed pro se because he demonstrated that he did not understand the nature of the attempted kidnapping charge (of which he was acquitted), how to impeach a witness, or lay a foundation to admit evidence. But the trial court repeatedly told Allgood that if he did not understand how to conduct himself as a trained attorney, he should not represent himself. Allgood ignored the trial court's warning and continued his request to proceed pro se. For all of these reasons, we conclude that Allgood's waiver of counsel was knowing, intelligent, and voluntary.

## Inappropriate Sentence

[18] Allgood also claims that his aggregate six-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In conducting our review, "[w]e do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008).

[19] Thus, although we have the power to review and revise sentences, the principal role of appellate review should be to attempt to "leaven the outliers, and identify some guiding principles for trial courts and those charged with

improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Id.* at 1225. It is Allgood's burden on appeal to establish that his sentence is inappropriate. *Grimes v. State*, 84 N.E.3d 635, 645 (Ind. Ct. App. 2017), *trans. denied.*

[20] When considering the nature of the offense, we observe that "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). Allgood received the maximum six-year sentence for his Level 5 felony robbery conviction. *See* I.C. § 35-50-2-6(b). His concurrent term of two and one-half years for Level 6 felony intimidation is also the maximum allowable sentence. *See* I.C. § 35-50-2-7(b). Citing *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011), Allgood argues that the maximum sentence "should be reserved for the worst of the worst," and "this case does not fit that description." Appellant's Br. at 13.

[21] Concerning the nature of the offense, Allgood argues that he did not have a weapon, no one suffered physical injury, and Miriam's financial loss was not significant. We acknowledge those facts but also observe that Miriam has suffered significant and lasting emotional trauma as a result of Allgood's crimes. She suffers from panic attacks, sleepless nights, and fear of leaving her home after dark. Tr. Vol. III, pp. 81–82. Miriam also stated that she has suffered financially because she is "unable to work in public this summer due to the anxiety[.]" *Id.* at 82. In addition, the stress caused by Allgood's offenses has

aggravated her preexisting neurological condition, and she has incurred additional medical expenses not covered by her insurance. *Id.*

[22] Allgood also argues that his "character does not constitute the worst" because he "comported himself well during trial" and he has secured two jobs so that he can be a productive member of society. Appellant's Br. at 13. But Allgood's criminal history is significant and reflects poorly on his character.

[23] Fifty-one-year-old Allgood has spent much of his adult life on probation or in prison. In 1987, he was convicted of felony passing forged instruments in Texas and sentenced to ten years. In 1989, Allgood was convicted of two felony robberies in Illinois and sentenced to serve three years in the Illinois Department of Corrections. In 1992, he was convicted of felony aggravated criminal sexual assault, felony armed violence, and felony home invasion in Illinois and ordered to serve twenty years in the Illinois Department of Corrections. In 1993, Allgood was convicted in Illinois of felony obtaining substance by fraud. In 2009 and 2010, he was convicted of misdemeanor domestic assault and four misdemeanor domestic batteries for offenses that occurred in 2007 and 2009. And in 2010, Allgood was convicted of felony burglary and sentenced to twelve years in the Illinois Department of Corrections. Allgood's criminal history establishes his poor character and inability to lead a law-abiding life.

For all of these reasons, we conclude that Allgood's six-year aggregate sentence is not inappropriate in light of the nature of the offense and the character of the offender.

## Conclusion

Allgood knowingly, intelligently, and voluntarily waived his right to counsel. And his six-year aggregate sentence is not inappropriate.

Affirmed.

Vaidik, C.J., and Crone, J., concur.